A00A1240. SUAREZ et al. v. HALBERT et al.
(543 SE2d 733)

POPE, Presiding Judge.

Ernesto and Beatriz Suarez, as maternal grandparents, filed a petition under the Family Violence Act, OCGA § 19-13-1 et seq., seeking to halt their son-in-law from committing further acts of violence against their minor grandchildren. After a hearing, the court found merit to the petition and placed the grandchildren in the grandparents' care and custody. Subsequently, the parents filed a motion for attorney fees under OCGA § 19-13-4 (a) (10), and the trial court assessed $10,440.55 in attorney fees against the prevailing grandparents, giving as the sole reason the disparity of income between the parties. We granted the grandparents' application for discretionary appeal to consider their contention that the attorney fees provision contained in the Family Violence Act was not intended to reward the perpetrators or the abettors of domestic violence.

On February 23, 1998, on behalf of themselves and their grandchildren, Ernesto and Beatriz Suarez filed a petition under the Family Violence Act solely against Michael J. Halbert. This petition alleged that Michael Halbert had committed and was continuing to commit multiple acts of violence which included: grabbing, dragging, and throwing his son; fighting with the children's mother; tying up his son in a bedroom and leaving him there; and making threats while in the children's presence to kill them, their mother, and himself. After an ex parte hearing, the trial court issued a temporary protective order to ensure the children's safety. Later, the trial court amended the order to add Beatriz Halbert as a party respondent to

the petition.

Evidence presented at a hearing on March 4, 1998, showed that eight years earlier, Beatriz Halbert had filed her own petition under the Family Violence Act seeking protection from Michael Halbert. This petition alleged that Halbert had threatened to kidnap the children and to kill her and the children. The record also shows that in another incident occurring in May 1997, Beatriz Halbert summoned police after Halbert had engaged in a violent confrontation with their son.

After being informed that the son had been communicating his extreme fearfulness regarding his father to a close relative via e-mail, the trial court decided to conduct an in camera hearing with the children. In that hearing, both children confided that they were afraid to return home. After speaking privately with the children, the court noted, "[y]ou can't really from a transcript tell the fear that I saw in this little guy's eyes, but he's very afraid. It came across to me that he's afraid and he does not want to come back home." Based on all the evidence including the testimony of psychologists and other witnesses, the trial court ordered a two-month extension of the initial protective order and directed that visitation by the parents occur only under supervision.

On May 6, 1998, the trial court conducted a second evidentiary hearing. The court again spoke privately with the children and decided that based on the "rancor and animosity" shown, supervised visitation by the parents involving the son should not continue. The trial court refused to return the children to a situation where the court believed a threat of violence continued to exist. The order entered on June 10, 1998, extended the placement of the two children in their grandparents' custody and care, until midnight August 24. The court ordered psychological evaluations and gave specific instructions on schooling, telephone calls, personal possessions, and pets and required the grandparents to transport the children to certain school and church activities.

While this protective order remained in effect and while the grandparents were providing substantial care for both children, Michael and Beatriz Halbert filed a motion seeking reimbursement from the grandparents, the Suarezes, for attorney fees purportedly incurred in responding to the Family Violence Act petition.[1] The Halberts sought the recovery of all their attorney fees billed through July 31, 1998, and totaling $20,880.91.

After oral argument on the motion for attorney fees, the trial

---

[1] The petition was filed in February, and counsel did not enter an appearance until March 30, 1998, when the Halberts apparently elected to replace their previous attorney.

court ordered the Suarezes to make four monthly payments solely to Beatriz Halbert, totaling $10,444.55, half of the total being sought. The court observed: "There is a disparity of income between the parties. Particularly, the Respondent, Beatriz Halbert defended this action at a time when she was undergoing a complicated pregnancy, could not work, and had limited funds." The court explicitly stated that its order was not "based on any finding of bad faith or improper conduct by the grandparent petitioners during the course of the litigation."

1. The Suarezes contend that the trial court erred by applying a divorce and alimony "disparity of income" standard to a motion for attorney fees filed under the Family Violence Act. They claim that the statutory framework does not envision imposing attorney fees upon the prevailing party who acts in good faith in bringing such a petition. They urge that the court committed legal error by engrafting a "disparity of income" test borrowed from another statute onto the Family Violence Act. We agree.

When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the "plain legal error" standard of review. *Glover v. Ware*, 236 Ga. App. 40, 45 (3) (510 SE2d 895) (1999). Moreover, "[w]here it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm. [Cit.]" *Gwinnett County v. Davis*, 268 Ga. 653, 655 (492 SE2d 523) (1997). This is such a case. See *Wood v. Dan P. Holl & Co.*, 169 Ga. App. 839, 841 (2) (315 SE2d 51) (1984).

As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract. *Indus. Distrib. Group v. Waite*, 268 Ga. 115, 116 (1) (485 SE2d 792) (1997). When awarded by statute, such fees may be obtained only pursuant to the statute under which the action was brought and decided. See *Ga. Subsequent Injury Trust Fund v. Muscogee Iron Works*, 265 Ga. 790, 791 (462 SE2d 367) (1995).

But here, it was the nonprevailing party, the Halberts, who sought and obtained attorney fees from the prevailing party. See, e.g., *Dunn v. Ceccarelli*, 239 Ga. App. 687, 689 (521 SE2d 237) (1999). And the statute under which the action was brought and decided does not expressly authorize an award of attorney fees to the nonprevailing party on the basis of disparate financial circumstances. The attorney fees provision contained in the Family Violence Act neither directs nor authorizes a trial court to consider the financial resources of either party. See OCGA § 19-13-4 (a) (10). And nothing in the Family Violence Act explicitly provides for the imposition of attorney fees against a prevailing party who has acted properly and brought the petition in good faith. On the contrary, that Act provides that a court may approve any order "to bring about a cessation of acts of family

violence," and such orders may "[a]ward costs and attorney's fees to either party" in furtherance of that goal. OCGA § 19-13-4 (a) (10). We fail to see how an award of attorney fees against the petitioners in this case would assist in bringing about the cessation of acts of family violence.

Further, the Halberts' reliance upon Code sections pertaining to divorce is misplaced. OCGA § 19-6-2 (a), upon which the Halberts rely, authorizes the grant of attorney fees for litigation relating to divorce and alimony cases and derivative actions such as child custody and property division. In such actions, a trial court must "consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party." OCGA § 19-6-2 (a) (1). But that Code section applies exclusively to litigation derived from divorce and alimony disputes and has no application in this case. See generally *Thedieck v. Thedieck*, 220 Ga. App. 764, 767 (2) (470 SE2d 265) (1996).

Moreover, case law construing OCGA § 19-6-2 has long observed that public policy is enhanced by enabling a spouse with inferior financial resources to properly protect his or her interests with respect to custody, child support, and alimony. See *Richardson v. Richardson*, 237 Ga. 830, 831-832 (1) (229 SE2d 641) (1976); *Brady v. Brady*, 228 Ga. 617, 618 (1) (187 SE2d 258) (1972). In this case, however, we cannot envision how public policy would be furthered by sanctioning petitioners found by the trial court to have acted in good faith. On the contrary, imposing attorney fees upon well-intentioned petitioners seeking to thwart the occurrence or recurrence of family violence would only serve to deter others from filing similar actions.

Beatriz and Michael Halbert, moreover, were represented by the same counsel. They were jointly billed and jointly served by the same counsel.[2] Therefore, to reimburse Beatriz Halbert for "her legal fees" would effectively operate to reimburse Michael Halbert as well.

Accordingly, we hold that, under the circumstances of this case, it was error to award attorney fees against the prevailing party premised solely on a disparity of income, and thus we reverse the award of attorney fees to Beatriz Halbert.

2. In light of our holding in Division 1, we decline to address the Suarezes' remaining enumeration of error.

*Judgment reversed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 16, 2000.

---

[2] Very little of the billing documentation differentiates the legal expenses pertaining to Michael from those relating to Beatriz Halbert. Most entries merely indicate "client."

*Sanders, Haugen & Sears, Robin G. Mayer*, for appellants.
*Bogart & Bogart, Jeffrey B. Bogart, Christine C. Bogart, George R. Ference*, for appellees.