## A06A1437. DOZIER v. JACKSON.
(638 SE2d 337)

MILLER, Judge.

Based on a single incident, Janette L. Jackson pled guilty to driving under the influence of alcohol and endangering a child by driving under the influence, in violation of OCGA § 40-6-391 (a) and (l), respectively (the "DUI Statute"). The Georgia Department of Driver Services ("the Department") thereafter suspended Jackson's license for three years for having two separate DUI convictions pursuant to OCGA § 40-5-63 (a) (the "License Suspension Statute"). Jackson appealed to the Superior Court of Henry County, which held that Jackson should not be treated as if she had two convictions since they resulted from a single incident. Greg Dozier, as commissioner of the Department, appeals. We find that the License Suspension

---

Statute does not require that convictions result from separate and unrelated incidents, and we therefore reverse.

Jackson was pulled over by a Georgia state trooper at approximately 5:00 in the morning on October 30, 2004. She submitted to chemical testing, and her blood-alcohol concentration was measured at more than one and a half times the legal limit provided under subsection (a) (5) of the DUI Statute. Jackson was charged separately for child endangerment DUI because an 11-year-old passenger was in the car with her. Jackson pled guilty to both charges.

After receiving the report of Jackson's two convictions, the Department suspended her license for three years for having two DUI-related convictions within five years. The trial court's reversal of that suspension and this appeal followed.

"When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citation omitted.) *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

The License Suspension Statute provides that "[t]he driver's license of any person convicted of an offense listed in Code Section 40-5-54 or of violating [the DUI Statute] . . . shall by operation of law be suspended . . . subject to the following terms and conditions. . . ." OCGA § 40-5-63 (a). The License Suspension Statute then describes the license suspension period "(1) [u]pon the first conviction of any such offense . . . (2) [u]pon the second conviction of any such offense within five years . . . [and] (3) [u]pon the third conviction of any such offense within five years," in which case the offender is subject to license revocation. Id.

In *Hardison v. Hall*, 162 Ga. App. 342, 344 (291 SE2d 416) (1982), this Court reviewed similar language contained in the Motor Vehicle Habitual Violator Statute now codified as OCGA § 40-5-58. That statute provided that any person "convicted three or more times" of the enumerated offenses within a five-year period would be deemed a "habitual violator" and subject to revocation of his driver's license. *Hardison*, supra, 162 Ga. App. at 343. In reviewing the plain language of the statute, we noted that it did not specifically require that the "convictions" arise out of separate and unrelated incidents. Id. at 344. Moreover, we opined that had the General Assembly intended to so limit which "convictions" were relevant under the statute, it "could have inserted a qualifying phrase similar to the one utilized [elsewhere]." Id. After reviewing both the plain language of the statute and the legislative intent, we concluded that the statute's "three convictions" requirement did not require that the convictions result from separate and unrelated incidents. Id.

In *Wilson v. Miles*, 218 Ga. App. 806 (463 SE2d 381) (1995), we again reviewed the Motor Vehicle Habitual Violator Statute and

noted that the General Assembly had subsequently modified the statute to provide that a person *"arrested and convicted . . .* three or more times" of the enumerated offenses within a five-year period shall be deemed a habitual violator. (Emphasis supplied.) Id. at 807. We concluded that the addition evidenced the General Assembly's intent to provide that an individual must have convictions arising out of separate and unrelated incidents to be considered a habitual violator under OCGA § 40-5-58.

"In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text." *Busch v. State,* 271 Ga. 591, 592 (523 SE2d 21) (1999). Here, the plain language of the License Suspension Statute provides for a three-year license suspension "[u]pon the second conviction" of one of the enumerated offenses within five years. OCGA § 40-5-63 (a) (2). The plain language of the statute does not require that such convictions result from separate arrests or separate and isolated incidents.

In drafting the License Suspension Statute, the General Assembly did not specifically require separate "arrests" as it did with the motor vehicle habitual violator statute at issue in *Wilson. Wilson,* supra, 218 Ga. App. at 809. Neither did the General Assembly insert a qualifying phrase to provide that multiple convictions resulting from a common indictment would be deemed only one conviction, as it did in the recidivism statute. OCGA § 17-10-7 (d). As a result, we find that the plain language of the License Suspension Statute does not require that convictions result from separate arrests or separate and isolated incidents.

Jackson claims that the plain language of the License Suspension Statute *implies* that separate arrests are required because subsection (a) (2) provides for a three-year suspension for an offender having two convictions during a five-year period measured "from the dates of previous arrests for which convictions were obtained to the date of the current arrest. . . ." However, subsection (a) (1) of the License Suspension Statute, which provides for a one-year suspension following a first conviction, uses the identical language in providing that the offender have *no* arrests during a five-year period that is measured "from the date of previous arrests for which convictions were obtained to the date of the current arrest. . . ."

For purposes of subsection (a) (1) of the License Suspension Statute, the use of the phrase describing the measurement period from "previous arrests" must be interpreted as defining the operative five-year period *in the event that* there are previous arrests or convictions. It cannot reasonably be read to *require* prior arrests, as the purpose of the subsection is to authorize license suspension where there have been no prior arrests within the past five years.

We will not construe the term "previous arrests" in the description of the five-year measurement period as implying that prior arrests are *required* for purposes of a second conviction (under OCGA § 40-5-63 (a) (2)) when the identical language must be read as *not requiring* prior arrests for purposes of a first conviction (under OCGA § 40-5-63 (a) (1)). See *Shotz v. City of Plantation*, 344 F3d 1161, 1168 (1) (a) (11th Cir. 2003) (providing that "the same words used in different parts of an act have the same meaning") (punctuation omitted); see also *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975) (providing that "[i]t is a well-established principle that a statute must be viewed so as to make all its parts harmonize and to give a sensible and intelligent effect to each part. [Cit.]").

While the trial court concluded that treating Jackson "as a two time DUI offender is contrary to common sense," a recent modification to the License Suspension Statute, while not effective at the time of Jackson's offenses, explicitly provides that such treatment is precisely what is required under the License Suspension Statute. The General Assembly modified the License Suspension Statute, effective July 1, 2006, to provide that "each charge for which a conviction was obtained shall be treated as a separate transaction for the purpose of imposing a license suspension hereunder, even if said convictions arise from a single incident." Ga. L. 2006, p. 449, § 9. The revised statute does not modify the provision regarding measurement of the five-year period that, according to Jackson, implied under the prior statute that previous arrests were required. Id.

By explicitly providing that convictions may arise from a single incident without modifying the phrase providing that the five-year period is measured from the dates of previous arrests, the General Assembly has expressed its belief that such phrase should not be interpreted to imply that previous arrests are required. See also *In the Interest of R. F. T.*, 228 Ga. App. 719, 722, n. 4 (492 SE2d 590) (1997) (holding "[t]hat which is expressed makes that which is implied to cease") (citation and punctuation omitted). In addition, the License Suspension Statute, both before and after the 2006 modification, consistently furthers a legislative intent of deterring the public from driving under the influence and protecting the public from those who have driven under the influence previously.

Both the plain language and legislative history of the License Suspension Statute indicate that licenses are to be suspended based simply on the number of convictions of the enumerated offenses within the five-year period. The License Suspension Statute, as in effect at the time of Jackson's offenses, did not require that such convictions result from different arrests or separate and isolated incidents. As a result, the Department properly suspended Jackson's

license for three years under subsection (a) (2) of the License Suspension Statute, and we are required to reverse the decision of the trial court.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 6, 2006 —
RECONSIDERATION DENIED NOVEMBER 6, 2006.

*Thurbert E. Baker, Attorney General, Mary B. Westmoreland, Deputy Attorney General, Christopher S. Brasher, Senior Assistant Attorney General, Robert W. Smith, Jr., Joseph J. Drolet, Assistant Attorneys General,* for appellant.

*Stein & Ward, Erin H. Gerstenzang, Thomas S. Barton, Jeremy E. Citron,* for appellee.