## A07A1566. TIMMONS v. COOK et al.
### (652 SE2d 604)

MILLER, Judge.

Kisiah Powell Timmons filed the underlying medical malpractice complaint against Maria J. Ribeiro, M.D., Emory University and/or Emory Healthcare, Inc., d/b/a Emory University Hospital, the Emory Clinic, Inc., Nanette Cook, M.D., and DeKalb Women's Specialists, P.C. ("DWS"),[1] alleging that medical mismanagement of her high risk pregnancy caused her to lose her eyesight. At trial, the jury returned a verdict for Cook and DWS, and the trial court entered judgment thereon. Timmons appeals, contending that the trial court erred (i) by admitting hearsay in evidence, (ii) by charging the jury that she was required to exercise ordinary care for her own safety, and (iii) by charging the jury on hindsight. Discerning no error, we affirm.

This Court reviews the judgment entered by the trial court after approval of a jury verdict upon the any evidence test, absent "any material error of law. [Cits.]" *Horan v. Pirkle*, 197 Ga. App. 151, 153 (2) (397 SE2d 734) (1990). We review questions of law de novo, applying the plain legal error standard of review. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

On September 14, 2000, Timmons first saw her primary care physician, Debra Henry, M.D., after two home pregnancy tests revealed that she might be pregnant. Dr. Henry confirmed the pregnancy and, because Timmons had a blood-clotting disorder which made her prone to abnormal blood clotting, referred her to Dr. Ribeiro, a hematologist, and to DWS to follow her high risk pregnancy. Dr. Ribeiro saw Timmons the same day and started her on 15,000 units a day of Fragmin, an anticoagulant. Timmons had an appointment at DWS on September 22, 2000, where she saw Patricia Steele, a medical assistant, who prepared Timmons' medical chart. That chart indicated, among other things, that Timmons had a protein S deficiency, a blood-clotting disorder, and that she had been experiencing "pounding headaches from early in the morning until late in the afternoon." Steele scheduled Timmons to be evaluated as a patient with a clotting disorder by Dexter Page, M.D., a perinatologist. Dr. Page saw Timmons on September 29, 2000 upon the understanding that he was to evaluate Timmons' risk for clotting and her headache symptoms as reported to Steele in light of her clotting disorder. On being evaluated by Dr. Page, however, Timmons did not

---

[1] Timmons dismissed defendants Emory University and/or Emory Healthcare, Inc., d/b/a Emory University Hospital. Following oral argument, Timmons through counsel, formally abandoned her amended motion for new trial as to Dr. Ribeiro and the Emory Clinic, Inc. Accordingly, the trial court ordered the latter defendants dismissed with prejudice.

complain of her headaches, because Steele had told her that headaches were a normal first trimester symptom.

On October 12, 2000, Timmons returned to DWS and saw Dr. Cook. At trial, Timmons testified that she reported to Dr. Cook that her headaches had substantially worsened, testimony that Dr. Cook denied. On October 16, 2000, in the ninth week of her pregnancy, Timmons suffered a massive cerebral venous thrombosis, the result of a fresh blood clot that had formed in her sinuses. Such clot was treated and resolved. Timmons thereafter reclotted on several occasions. Despite further treatment, including the medical termination of her pregnancy on October 27, 2000, blindness resulted on October 31, 2000. The instant litigation followed two years later.

1. Timmons challenges the trial court's denial of her motion for new trial, contending that it erred in admitting certain exhibits as inadmissible hearsay. We disagree.

Dr. Cook's Exhibits 2-4 were copies of portions of an application for long term disability payments completed by Timmons' mother on her behalf. The exhibits indicated that Timmons had first experienced severe headaches symptomatic of her illness on October 14, 2000, *after* her September 22 and October 12, 2000 appointments with Dr. Cook at DWS.

Timmons' claims to the contrary notwithstanding, "[a]dmissions by privies in blood[, as here,] shall be admissible as against the parties themselves." OCGA § 24-3-32. Moreover, the record shows that Timmons stipulated, without objection, to the admission in evidence of Joint Exhibit No. 7, an exhibit that provided the jury information identical to that of which she complains. The instant claim of error, therefore, is waived. "It is well established that one cannot complain of a judgment, order, or ruling that her own procedure or conduct procured or aided in causing. . . ." (Citation omitted.) *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 320 (2) (486 SE2d 851) (1997).

2. Timmons argues that the trial court erred in giving Dr. Cook's request to charge that she "was required to exercise ordinary care for her own safety by seeking further medical care when her condition did not improve and later worsened." Again we disagree.

Under Georgia law, a patient must fully disclose all information relevant to her condition to her treating physician and seek additional medical care if her condition does not improve or worsens. See, e.g., *Oxford v. Upson County Hosp.*, 211 Ga. App. 59, 59-60 (438 SE2d 171) (1993); *Carreker v. Harper*, 196 Ga. App. 658, 659 (1) (396 SE2d 587) (1990); *Haynes v. Hoffman*, 164 Ga. App. 236, 237 (2) (296 SE2d 216) (1982) ("[N]ondisclosure of relevant information may constitute contributory negligence on the part of the patient. [Cits.]"); *McMullen v. Vaughan*, 138 Ga. App. 718, 720 (2) (227 SE2d 440) (1976) ("It is

axiomatic that all persons are required to exercise ordinary care for their own well-being. [Cit.]").

Here, it is undisputed that upon being asked if she was having headaches, Timmons reported none to Dr. Page when she saw him on September 29, although she testified at trial that she continued to have them off and on during the week and that "they were not particularly bad on that day." Dr. Cook also took a medical history from Timmons when she saw her on October 12, at which time she complained only of nausea and not a headache. While there was evidence that Timmons' headaches worsened significantly after her visit to Dr. Cook, she made no effort to call a physician, and she refused her husband's offer to take her to the emergency room on October 15, a day after she stated through her mother that severe headaches had begun.

"When there is any evidence, however slight, upon a particular issue, it is not error for the court to charge the law in relation to that issue." (Citations and punctuation omitted.) *Oxford*, supra, 211 Ga. App. at 60. We find the complained of charge well supported by the evidence and therefore properly charged to the jury.

3. Neither did the trial court err in charging the jury that the "concept of negligence does not include hindsight. Negligence consists of not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible."

> In a medical malpractice case, a hindsight charge is authorized where the evidence raises an issue as to whether the negligence claim is based on later acquired knowledge or information not known or reasonably available to the defendant physician at the time the medical care was rendered.

(Citations and punctuation omitted.) *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622, 632 (4) (610 SE2d 546) (2005); *Haynes*, supra, 164 Ga. App. at 238 (3).

In this case, the evidence raised an issue of whether Timmons' claims were based on knowledge or information reasonably available to Drs. Page and Cook only after they assessed her on September 29 and October 12, respectively. Accordingly, the charge on hindsight was authorized. *Steele*, supra, 271 Ga. App. at 632 (4).

Given the foregoing evidence supporting the verdict, the trial court did not err in denying Timmons' motion for new trial. *Suarez*, supra, 246 Ga. App. at 824 (1); *Horan*, supra, 197 Ga. App. at 153 (3).

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 1, 2007.

*Wilkes & McHugh, Gary L. Wimbish,* for appellant.

*Green, Johnson & Landers, Henry D. Green, Jr., Andrette Watson, Peters & Monyak, Robert P. Monyak, Bonnie M. Lassiter,* for appellees.