MILLER, Judge.
 

 In November 2006, the Hephzibah City Commission (the "Commission") voted to remove Peter Ciccio from his post as a member of the Commission based on the removal provisions contained in the Charter of the City of Hephzibah (the "Charter"). Following a hearing, the trial court affirmed the Commission's decision to remove Ciccio from his post. Ciccio appeals, claiming that the trial court erred in determining that the Charter authorized his removal as a Commissioner based on the undisputed facts. We agree and reverse.
 

 "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the `plain legal error' standard of review." (Citation omitted.)
 
 Suarez v. Halbert,
 

 246 Ga.App. 822
 
 , 824(1),
 
 543 S.E.2d 733
 
 (2000). So viewed, the undisputed facts show that Ciccio was elected to the Commission in November 2003, and he took office in January 2004. One month later, on February 10, 2004, Ciccio was charged with theft by receiving, based on acts he was alleged to have committed in 2003. In October 2006, Ciccio pled guilty to theft by receiving, and he was sentenced (without an adjudication of guilt) to five years of probation under the First Offender Act. OCGA § 42-8-60 et seq. At that time, Ciccio admitted that he had facilitated the sale of a tractor that had no certificate of origin, bill of sale, or keys, and that he should have known the tractor had been stolen.
 

 On November 10, 2006, and as a result of Ciccio's admission of guilt, the Commission voted unanimously to remove him from his post pursuant to the removal provisions of the Charter. The trial court affirmed Ciccio's removal, finding that "[w]hile there is clearly nothing that would require the Commission to remove ... Ciccio, they were [vvithlin their legal authority to do [so]."
 

 Ciccio claims that the removal provisions of the Charter did not authorize the Commission to remove him from his position as a duly-elected member of the Commission. We agree,
 

 Section 19 of the Charter provides that any member of the Commission may be removed, subject to notice and a hearing, upon
 

 **135
 

 the vote of the remaining Commissioners finding that such member (i) was guilty of "misfeasance or malfeasance in office," (ii) had abandoned his or her office or "neglect[ed] to perform the duties thereof," or (iii) had failed "for any other cause to perform the duties, of office as required by state law."
 
 [1]
 

 *246
 
 Despite the City's claim that Ciccio committed "misfeasance or malfeasance in office" by not admitting his guilt until October 2006, Georgia courts have narrowly defined such terms in the context of removal proceedings to include only an official act or one done under the color of office. See
 
 Cargile v. State,
 

 194 Ga. 20
 
 , 24(2),
 
 20 S.E.2d 416
 
 (1942);
 
 Phillips v. State,
 

 127 Ga.App. 499
 
 , 500(1),
 
 194 S.E.2d 278
 
 (1972) ("if a judge commits an armed robbery or a stock swindle, he has committed a crime but not the crime of malpractice in office").
 
 [2]
 
 Here, Ciccio's conduct of maintaining his innocence prior to pleading guilty in 2006 was indisputably not an "official act" or one done "under the color of his office" as a member of the Commission. Similarly, there was no evidence that Ciccio's failure to admit his guilt immediately upon taking office resulted in an abandonment of such office or prevented him from performing his duties as a member of the Commission.
 

 Finally, the City claims that Ciccio's removal was proper because he failed "to perform the duties of office as required by state law" in that his refusal to admit guilt prior to his plea was an "evasion" of the law and proscribed by Georgia's Code of Ethics for Government Service. OCGA § 45-10-1 ("Any person in government service should ... [u]phold the ... laws ... and never be a party to their evasion."). We note, however, that at all times after his indictment, Ciccio was entitled by both the United States and Georgia Constitutions to a jury trial of the crime with which he was charged. U.S. Constitution, Amendment VI; Ga. Const. of 1983, Art. I, Sec. I, Par. XL As a result, Ciccio was not guilty of "evading" the law after he became a member of the Commission merely because he availed himself of the opportunity to have his case tried before a jury until the time that he
 

 **136
 

 entered his guilty plea. While we do not condone Ciccio's conduct, his acts did not subject him to removal pursuant to the terms of the Charter, but would have been more appropriately the subject of a recall petition pursuant to OCGA § 21-4-1 et seq.
 

 Judgment reversed.
 

 BARNES, C.J., and SMITH, P.J., concur.
 

 The Charter also allows removal of a Commissioner who had been convicted of a "crime involving moral turpitude," but the Commission did not seek to remove Ciccio based on this provision, apparently recognizing that where a person sentenced to probation under the First Offender Act completes such probation without violation, he is not considered to have a criminal conviction.
 
 Witcher v. Fender,
 

 260 Ga. 248
 
 , 249,
 
 392 S.E.2d 6
 
 (1990); see also
 
 Priest v. State,
 

 261 Ga. 651
 
 , 652(2),
 
 409 S.E.2d 657
 
 (1991) ("the entry of a guilty plea under OCGA § 42-8-60 is not a `conviction' within the usual definition of that term") (citation omitted).
 

 We note that while Georgia's Recall Act (OCGA § 21-4-1 et seq.) provides a broader definition of "malfeasance in office," the Commission did not comply with the procedures contained in that Act-apparently because they determined that removing Ciccio pursuant to the removal provisions of the Charter would be more efficient and cost-effective than the less drastic act of pursuing his recall by the voters who had duly elected him three years previously.