A08A2204. DEERE PARK & ASSOCIATES v. C H FURNITURE SOURCE, LLC.

(674 SE2d 635)

MILLER, Chief Judge.

Deere Park & Associates ("Deere Park") filed three UCC Financing Statements in inventory located at a furniture store operated by C H Furniture Source, LLC ("C H Furniture") in order to secure payments from C H Furniture pursuant to a consulting agreement between the parties. After a dispute arose between the parties, Deere Park filed suit and moved for a temporary restraining order, but in lieu of granting the injunctive relief Deere Park requested, the trial court issued an order requiring C H Furniture to post a bond in the amount of its alleged debt to Deere Park. When C H Furniture failed to comply with the trial court's order and the trial court refused to grant further relief, Deere Park filed an emergency motion for reconsideration, seeking an immediate writ of possession, or alternatively, appointment of a receiver. Deere Park appeals from the trial court's order denying its emergency motion, arguing that it was entitled to an immediate writ of possession based upon C H Furniture's ongoing violation of OCGA § 44-14-234 (3) and (4). Deere Park further argues that the trial court abused its discretion in declining to grant injunctive relief or to appoint a receiver. Finding that Deere Park was entitled to an immediate writ of possession, we reverse.

This appeal presents a question of law concerning the proper interpretation of OCGA § 44-14-234 (3) and (4), and as such, we owe no deference to the trial court's ruling and apply the "plain legal error" standard of review. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). Moreover, "[w]here it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm. [Cit.]" *Gwinnett County v. Davis*, 268 Ga.

653, 655 (492 SE2d 523) (1997).

The record shows that on February 21, 2008, Deere Park entered into a Consulting Agreement ("Agreement") with C H Furniture to conduct a "going out of business sale" at C H Furniture's store and to provide certain consulting services, including staffing and procuring inventory for the sale. C H Furniture agreed to reimburse Deere Park for consultant's costs and other fees defined in the Agreement, as well as for funds advanced by Deere Park on behalf of C H Furniture to purchase additional merchandise to fill customer orders during the sale. Under the Agreement, C H Furniture gave Deere Park a security interest in all inventory, and on February 28, 2008, Deere Park filed three UCC Financing Statements in C H Furniture's inventory on hand and all proceeds arising from that inventory.

On February 19, 2008, prior to the sale and before filing the financing statements, Deere Park's personnel conducted a complete inventory of furniture in C H Furniture's store. Deere Park had actual knowledge that 90-95 percent of the inventory in the store was not owned by C H Furniture but was owned by vendors and consignors, including individuals and companies. Deere Park noted and coded the consigned merchandise, and brought in merchandise to supplement the sale. David Statton, who represented Statton Furniture and Sovereign Furniture, had a consignment agreement with C H Furniture and approximately $45,000 in inventory in C H Furniture's store. During negotiations and discussions leading up to the Agreement, David Herckis, president of C H Furniture's store, told Richard Glabman, president of Deere Park, that he had over $1,000,000 of consigned inventory and over $150,000 of his own inventory. None of the third party consignors, however, filed any UCC Financing Statements in their merchandise.[1]

Under the Agreement, Deere Park had an obligation to ". . . control and administrate . . ." for the parties all sales proceeds. Specifically, Deere Park was responsible for making rental payments to C H Furniture's landlord. With respect to consigned inventory, the parties had an understanding that C H Furniture would receive 50 percent of the proceeds from sales that Deere Park made, and then C H Furniture in turn, would pay its consignors.

The events leading to the instant lawsuit are in dispute. C H Furniture contends that Deere Park sold over $100,000 of merchandise belonging to third parties, but never transferred any of the

---

[1] Glabman disputes C H Furniture's contention that certain inventory in the store was marked or segregated as consigned property. Further, Glabman also claims that Herckis advised Glabman that all of the inventory in the store was to be treated as part of the collateral for Deere Park's security interest.

proceeds to C H Furniture and never made rental payments to C H Furniture's landlord. On April 18, 2008, C H Furniture's landlord sent a notice of default to C H Furniture advising C H Furniture that it would close down the furniture store if C H Furniture failed to pay the rent within ten days. C H Furniture also claims that when it notified Deere Park about the potential closure, Deere Park came to the furniture store to remove its inventory but failed to pay rent or utilities as required by the Agreement. Deere Park, in turn, claims that C H Furniture defaulted under the Agreement by terminating the sale and refusing to reimburse Deere Park for the consultant's costs. According to Deere Park, C H Furniture was responsible for the rent payments.

On May 1, 2008, Deere Park sued C H Furniture for breach of contract and sought a writ of possession, ex parte temporary restraining order, and injunctive relief. On the same date, Deere Park filed a Motion for Temporary Restraining Order and Preliminary Injunction. On May 8, 2008, C H Furniture filed its Verified Answer and Counterclaim. Also on May 8, 2008, the trial court held a hearing on the Motion for Temporary Restraining Order and Preliminary Injunction and entered a Temporary Restraining Order ("TRO") by consent of the parties, requiring C H Furniture to post a bond in the amount of $145,000 on or before the close of business on May 13, 2008. C H Furniture did not post the required bond. On May 13, 2008, the trial court held a hearing on Deere Park's request for a writ of possession[2] and temporary restraining order and denied both requests. On May 16, 2008, Deere Park filed an emergency motion for reconsideration or alternatively, for appointment of receiver based on C H Furniture's continuing violations of the TRO and OCGA § 44-14-234. On May 19, 2008, after a hearing on the emergency motion, the trial court denied the motion.

1. Deere Park argues that the trial court erred in denying its emergency request for the immediate issuance of a writ of possession because C H Furniture sold and transferred merchandise subject to Deere Park's security interest without posting bond as required by OCGA § 44-14-234 (3) and (4) and the TRO. We agree.

---

[2] The TRO provided that if the bond was not posted by the close of business on May 13, 2008, the parties shall appear before the trial court on May 14, 2008, to consider Deere Park's request for a writ of possession and any need for further injunctive hearings. On May 12, 2008, C H Furniture's counsel advised Deere Park's counsel that C H Furniture could not post the bond. On the same date, in an emergency telephone hearing before the trial court, Deere Park offered evidence of C H Furniture's continued sale of inventory in violation of OCGA § 44-14-234 and the TRO and requested the issuance of an immediate writ of possession. The trial court scheduled the hearing for May 14, 2008, but the hearing was actually held on May 13, 2008.

Pursuant to OCGA § 44-14-233 (c), after the plaintiff has commenced an action for a writ of possession under OCGA § 44-14-231, "[t]he defendant shall be allowed to remain in possession of the secured property pending the final outcome of the litigation, *provided that the defendant complies with Code Section 44-14-234.*" (Emphasis supplied.) OCGA § 44-14-234 (3) provides that "[a]fter the date of the service of the summons . . . , *the defendant shall not transfer, remove, or convey the secured property without posting bond as provided in Code Section 44-14-237.*" (Emphasis supplied.) OCGA § 44-14-237 states:

> In all cases where the defendant may desire to transfer, remove, or convey any of the secured property after the service of the summons and after having an opportunity to answer, the defendant shall post bond for the delivery of the property at the time and place of sale. The bond shall be with good security for a sum equal to the value of the property or the amount of the alleged remaining balance, whichever is less.

OCGA § 44-14-234 (4) provides that "[i]f the defendant fails to comply with any provision of this Code section to the detriment of the plaintiff, the court shall issue a writ of possession."

Although it is undisputed that C H Furniture transferred and conveyed inventory as to which Deere Park was seeking a writ of possession but failed to post a bond as required by OCGA §§ 44-14-234 (3) and 44-14-237 as well as the trial court's TRO, the trial court declined to issue an interlocutory writ of possession.

The trial court relied on *Jordan v. Farmers &c. Bank of South Carolina*, 138 Ga. App. 43 (225 SE2d 498) (1976). In *Jordan*, the trial court considered the application of the predecessor to OCGA § 44-14-234 (1), which required the defendant to pay into the court registry certain undisputed amounts, including "all past due amounts admitted due for which there are no allegations of defenses or claims, which, if proven, would offset said amounts alleged past due." Id. at 44 (1). In *Jordan*, the defendant filed an answer disputing the relief sought by the plaintiff, and we therefore held that the defendant was not required to deposit any money into the registry pending a trial on the merits.[3] Id. Accordingly, because the defendant was in compliance with all provisions of OCGA § 44-14-234, we reversed the trial court's grant of an interlocutory writ of

---

[3] Under the current version of OCGA § 44-14-234, the trial court is authorized to hold a hearing prior to the trial on the merits to determine what amount should be deposited into the registry of the court when the parties dispute amounts past due. OCGA § 44-14-234 (2).

possession. Id.

This case does not involve a failure to deposit money into the court's registry under OCGA § 44-14-231 (1) but instead a failure to post bond before transferring or conveying property subject to a security interest. The undisputed evidence shows that C H Furniture continued to sell merchandise from its store after the date of the summons, in violation of OCGA § 44-14-234 (3). C H Furniture also admitted in its Verified Answer and Counterclaim that it "intend[s] to close its business and intends to sell all of the merchandise in its store," and "agree[d] to post a bond for the benefits of Plaintiff's claimed interests, as provided by law." In order to transfer, remove or convey the merchandise, C H Furniture was required to post bond.[4] OCGA § 44-14-234 (3).

While the trial court observed that the amount "Deere Park alleges it is owed by C H Furniture is in dispute and C H Furniture has a pending counterclaim against Deere Park for alleged monies C H Furniture claims Deere Park owes due to an alleged breach of the parties' agreement," these disputed issues did not excuse C H Furniture's noncompliance with OCGA § 44-14-234 (3). Because of this noncompliance, Deere Park was entitled to an immediate writ of possession, and the trial court's failure to issue the writ was error. OCGA § 44-14-234 (4).

At this juncture, we need not reach the issue of Deere Park's knowledge of the consignments and its effect on the priority of Deere Park's security interests in the inventory at C H Furniture's store. These disputed issues and the merits of the parties' respective breach of contract claims will be resolved during a trial on the merits. This ruling only affects the parties' rights to temporary possession of the merchandise pending such trial. See *Ward v. Charles D. Hardwick Co.*, 156 Ga. App. 96 (274 SE2d 20) (1980) (the writ of immediate possession determines only the right of possession pending a final decision on the merits); OCGA § 44-14-234 (4).

2. Deere Park also contends that the trial court abused its discretion by denying its motion for injunctive relief. In light of our holding in Division 1, we need not reach the issues of whether Deere Park was entitled to injunctive relief prohibiting further transfers of inventory or to appointment of a receiver.

For the reasons set forth above, we find that the trial court erred in denying Deere Park's request for immediate issuance of a writ of possession. We reverse and remand the case to the trial court for proceedings consistent with this opinion.

---

[4] The trial court's TRO also directed C H Furniture to escrow any sales proceeds with its own attorney, but this dictate was also violated.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 3, 2009.

Holland & Knight, *Lindsey G. Churchill, Kimberly R. Ward*, for appellant.

Andrew, Merritt, Reilly & Smith, *Paul E. Andrew*, for appellee.