**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 25, 2026

# In the Court of Appeals of Georgia

A26A0772. DUNN v. DUNN.

DOYLE, Presiding Judge.

Danny Ray Dunn appeals from the trial court's September 25, 2025 order denying his petition for modification of custody, imposing supervised visitation on him, and granting the counter-petition for contempt of the final order of divorce filed by his ex-wife, Caryn Dunn ("Caryn"). Dunn enumerates 11 errors regarding the order. For the reasons that follow, we affirm and sanction Dunn for filing a frivolous appeal.

This case has an extended procedural history before this Court. In July 2019, Caryn filed a verified petition for divorce from Dunn, seeking custody of their four

minor children, an order of support, and division of marital property. See *Dunn v. Dunn*, 368 Ga. App. 161, 161 (889 SE2d 352) (2023) ("*Dunn II*").

At the time of the petition, the marital home was located at 1817 Slygo Road, which Caryn requested that she be awarded. Additionally, she alleged that the parties had acquired during the course of the marriage the following parcels of real property: (1) 105 New England Road; (2) 27 Fisher Road; (3) 258 County Road 694, Flat Rock, Alabama; and (4) 3282 Newsome Gap Road, which consisted of four separate parcels — 9, 10, 13, and 32. In addition to the marital residence, Caryn requested that the Court award her "27 Fisher Road ... and equitably divide the remaining marital property." Caryn also requested that the court award her one-half of Dunn's retirement savings.

Dunn "answered and counterclaimed for sole custody of the children, an award of child support, and equitable division of personal property and debt." *Dunn II*, 368 Ga. App. at 161. The financial affidavit he filed stated that he had $141,000 in a 401(k). As compared to Caryn's list of real property, Dunn's financial affidavit listed eight unlabeled parcels of real estate (aside from the marital home) and three timeshares.

In September 2019, the trial court appointed a guardian ad litem and entered a temporary custody order, awarding child support to Caryn, allowing her temporary use of the marital home, and freeing the sale or transfer of the real property and the parties' retirement accounts.

The court held a bench trial on October 28, 2020, during which Caryn testified that she had an IRA with about $3,000; Dunn's October 22 financial affidavit listed a 401(k) of $125,000 (less than the amount previously reported), the real property listed above, and the three timeshares. Dunn claimed to have purchased lots 9, 10, and 13 of the Newsome Gap Road parcels with premarital funds, but failed to bring supporting documents to the bench trial. Dunn did not dispute that the Flat Rock, New England, or Fisher Road properties were marital property. Dunn testified that he had lost his job, but he had been hired by another company and was set to begin the week after the trial; when questioned, he denied knowing what his new salary would be.

The court ruled as to division of the martial property and custody and directed Dunn to update the court with his new salary, or it would impute to him his prior income in order to determine child support. The court directed Dunn to provide

evidence that he had purchased the three Newsom Gap lots with premarital funds, or the court would order their sale along with the other real estate, with the proceeds equally divided between the parties. The court awarded the marital home to Caryn, directed the parties to calculate the total of all retirement funds and home equity and transfer to Caryn via a qualified domestic relations order ("QDRO") any portion of Dunn's 401(k) over that amount — essentially directed that the parties equally divide Dunn's retirement in half, and from Caryn's half, subtract the amount of half the marital home's equity plus $3,000 (to account for Caryn's IRA). The court also ordered Dunn to provide any necessary 401(k) statements to complete the calculation and distribution.

At the direction of the court, Caryn's attorney prepared an order, checking with Dunn's attorney intermittently for updates regarding "proof of income and any premarital asset information." *Dunn II*, 368 Ga. App. at 164(1). Dunn failed to provide any such information, so in mid-December, Caryn's attorney prepared and forwarded to Dunn's counsel the proposed order before sending it to the court the following week. See id. Although the court was notified that neither Dunn nor his attorney had

approved the order, it entered it on December 15, 2020, nunc pro tunc to October 28,

2020. See id. The order

> grant[ed] the parties joint legal custody of their four children with
> [Caryn] having primary physical custody and final say in the event of any
> dispute between the parties over any joint legal custody issue. The court
> found that [Dunn] earn[ed] $5,048 per month and ordered him to pay
> $1,566 in monthly child support, noting that he was ordered to provide
> his most recent paycheck stub at the final hearing so that child support
> could be determined but that he had not "provide[d] the same, thus the
> [c]ourt will impute his income from the [t]emporary [o]rder." The court
> also awarded [Caryn] sole ownership of the marital residence and
> ordered that all other real property be listed with a realtor and "sold in
> a commercially reasonable manner." As to the "other real property,"
> the trial court noted that "[a]t the time of the hearing, [Dunn] claimed
> that the real property was purchased in part with premarital funds.
> [Dunn] was given the opportunity to provide the information to the
> [c]ourt. He has failed to do so[.] [F]or this reason, the [c]ourt finds that
> all interest in the real property was marital." *Dunn II*, 368 Ga. App. at
> 162.

With regard to the retirement, the trial court had awarded Caryn

> with one-half of the current value of [Dunn's] 401(k) Retirement
> Account less the amount of $43,040 which represents one-half of the
> equity in the marital residence. [Dunn] shall provide to [Caryn], by and
> through their respective counsel, the most current statement for said

5

401(k) Retirement Account. A [QDRO] shall be entered if necessary, to allow for this division ... The parties shall sign any and all documents necessary in order to carry out the intent of this Order.

Dunn appealed the December 15 order, which this Court reviewed in *Dunn II*. See id. at 161. In that appeal, Dunn raised several arguments, but this Court affirmed the order except with regard to the lack of parenting plan requirements of OCGA § 19-9-1. See id. at 166–67(4). This Court vacated in part the December 15 order as to that issue *only*. See id. This Court also addressed the lack of specificity in the December 15 order regarding the real estate parcels, citing *Newborn v. Clay*, 263 Ga. 622, 623 (436 SE2d 654) (1993) (explaining a default rule for real property in divorce proceedings), noting that on remand the court "may wish to clarify what real property" must be sold. See id. at 169–70(7). Nevertheless, this Court affirmed the trial court's ultimate ruling that Dunn failed to provide evidence that any of the property was purchased with premarital funds and that the real property aside from the marital home must be sold and the proceeds split between the parties. See id. at 169–70(7). This Court did not explicitly address Dunn's enumeration of error regarding the 401(k) assets, but again, we affirmed the overall property distribution. See id.

In the immediate months after entry of the December 15, 2020 order, Caryn filed two motions for contempt because Dunn failed to comply with certain provisions in the decree, and she also petitioned for a family violence protective order. See generally *Dunn v. Dunn*, 363 Ga. App. 132 (871 SE2d 30) (2022) ("*Dunn I*"). The trial court granted these motions and the petition,[1] but in a separate appeal from those three orders, this Court reversed the contempt orders on the basis that Dunn's pending motion for new trial of the final order divested the trial court of jurisdiction to act on Caryn's motions. See id. at 133–35(1)(a). This Court did not rule on the substance of whether Dunn had failed to pay child support, had withheld the children from Caryn, had failed to provide 401(k) information, or had sold two parcels of real property (Flat Rock and New England) in violation of the final order. See id. This Court reversed the family violence temporary protective order for insufficient evidence. See id. at 136–39(4).

On remittitur from *Dunn II*, on March 26, 2024, the trial court purportedly entered a final order with a parenting plan. This document does not appear in the

---

[1] After entry of these three orders on January 7, 2021, February 5, 2021, and April 8, 2021, Dunn filed numerous pro se motions, including to recuse the judges involved in the case, to strike any current or future testimony of the guardian ad litem, and to disqualify Caryn's attorney.

record in this appeal, and despite the fact that Dunn has appealed many times, he does not appear to have appealed the March 26 order. Dunn's brief also lacks a record citation to this order.

A few months after entry of the March 26 order, on June 7, 2024, Dunn filed the instant petition for custody modification. Caryn answered and filed a counter-petition for contempt for Dunn's failure to comply with the provisions of the December 2020 order regarding retirement fund sums and the marital real estate. Dunn moved to dismiss Caryn's counter-petition, alleging that it was barred under OCGA § 19-9-24(b) because she was withholding visitation from him.

No hearing occurred on Dunn's June 2024 petition until August 2025, due to various stays in the proceedings during Dunn's appeals to this Court of various orders. At the hearing, the court noted that it had vacated a civil arrest warrant for Dunn that had been entered based on a contempt finding for his failure to comply with the property division provisions of the final divorce order; Dunn chose to attend the hearing virtually.

The court heard testimony from the principal of the elementary school where the youngest child attends school. She testified that Dunn began verbally harassing

8

staff at the school after Caryn removed his parents from the school-approved pickup lists. The principal testified that she had never experienced behavior like Dunn's during her 27 years of teaching, and the harassment was so intense that the school resource officer obtained a criminal arrest warrant for Dunn around April 2025. The principal explained that Dunn himself was still on the pickup list, but he had stopped picking the children up around 2024 because of an open civil arrest warrant.

The parties' 17-year-old child, T. D., testified that he did not believe that it was in his or his siblings' best interest to visit with Dunn, who had a bad temper and behaved unpredictably. T. D. testified that Dunn was a pathological liar, and Dunn got into a physical altercation with the 15-year-old child over a cell phone. T. D. denied that Caryn alienated the children from Dunn or that she coached his testimony; on the other hand, he testified that Dunn previously told the children that Caryn was an alcoholic and drug addict. T. D. also testified that despite having control over his personal cell phone, Dunn had not contacted him directly in at least six months. Caryn, Dunn, and Dunn's mother also testified. At the close of testimony, Caryn requested that the court impose supervised visitation on Dunn, who reiterated his request for split custody.

On September 25, 2025, the trial court entered an order denying Dunn's petition and granting Caryn's counter-petition, finding explicitly that Dunn's testimony was not credible. The court found that a material change had occurred based on Dunn's behavior, and it was in the best interests of the children to maintain the same visitation contained in the March parenting plan (assuming that Dunn chose to exercise visitation), but required any visitation with Dunn be supervised by Dunn's parents. The court found that the December 2020 final order as amended by the March 26 order should be amended with regard to the real property, but found the current hearing was not the appropriate proceeding for such an amendment. Finally, the court found that Dunn was in wilful contempt of the divorce order and

> ordered [him] held by the Sheriff in the common jail of Dade County, Georgia, until such time as he purges himself by providing his retirement account statements to Defendant and remitting her [half] of his retirement funds less $43,040.00 plus interest at the legal rate since the judgment of divorce was entered.

Dunn appeals that order.

1. Dunn argues that the trial court lacked authority to enter the final order due to an invalid case assignment and an "overbroad, noncompliant order of

appointment." At the hearing, however, Dunn was specifically asked whether he consented to have the case heard by the assigned judge, and he agreed. This claim of error is not preserved unless the appointment is challenged prior to trial, which it was not. See *Bennett v. Jones*, 218 Ga. App. 714, 715 (463 SE2d 158) (1995). Accordingly, this enumeration is meritless.

2. Dunn challenges the contempt order in several enumerations.

(a) First, Dunn argues that the trial court erred by failing to find that Caryn's renewed contempt claim regarding retirement funds was barred by prior orders. Essentially, Dunn argues that this claim is barred because this Court previously "reversed" a contempt order on the same issue. See *Dunn I*, 363 Ga. App. at 132. In *Dunn I*, this Court determined that the trial court was without jurisdiction to enter the contempt orders because of Dunn's pending motion for new trial. See id. at 133–34(1)(a), 136(2). Dunn's appellate briefs take statements from *Dunn I* out of context and mischaracterize the holding. In *Dunn II*, 368 Ga. App. at 161, this Court affirmed the December 15 final order as to every issue except the statutory parenting plan requirements. Therefore, the contempt order does not violate law of the case.

11

As for Dunn's contention that a statement by the trial court made in the March 26, 2024 order forecloses the matter, that document is not a part of the appellate record. See *Leone v. Green Tree Servicing, LLC*, 311 Ga. App. 702, 704(1) (716 SE2d 720) (2011) ("'The burden is on the party alleging error to show it affirmatively on the record.'"). See also Court of Appeals Rule 25(d). And despite culling the record, this Court has been unable to find this order or the alleged comment.

In any event, the trial court would have been bound by law of the case from *Dunn II*, which upheld the property division, so any statement by that court should be read in the appropriate procedural posture. See *Ovrevick v. Ovrevick*, 254 Ga. App. 756, 759–60(2) (564 SE2d 8) (2002) ("The 'law of the case' rule ... applies to rulings by one of our appellate courts in a particular case; such rulings are binding in all subsequent proceedings in the same matter[.]").

Finally, Dunn contends that an earlier contempt is res judicata in this instance. We disagree for the reasoning stated above. In any event, Dunn has not established that he has ever provided statements that comport with the financial affidavits he had filed in the trial court in September 2019 and October 2020, or that he provided sufficient account information to allow for a proper calculation and transfer via QDRO

of any retirement fund distribution. Accordingly, there was no error by the court in holding Dunn in contempt as to this issue.

(b) Dunn also argues that the retirement fund order was too vague or indefinite to be enforced. *Dunn II*, 368 Ga. App. at 161, affirmed the retirement fund order contained in the final order of divorce, and Dunn cannot challenge that order further here. Given the fact that any vagueness in the order exists because of Dunn's own stonewalling behavior in failing to cooperate at the final hearing and in all proceedings and interactions thereafter, this argument is particularly unavailing. This Court has previously admonished Dunn that " '[i]t is well established that one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing.' " *Dunn II*, 368 Ga. App. at 169(7) (quoting *Timmons v. Cook*, 287 Ga. App. 712, 713(1) (652 SE2d 604) (2007).

(c) Dunn contends that the trial court erred by modifying the divorce decree via a contempt action and imposing the requirement that he make a cash payment instead of a QDRO.

> A trial court may interpret a divorce decree, or clarify a prior order or judgment, in the course of resolving contempt issues placed before it. In addition, the trial court has the power to see that there be compliance

with the intent and spirit of its decrees, and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party.

*Killingsworth v. Killingsworth*, 286 Ga. 234, 236(2) (686 SE2d 640) (2009) (citation and punctuation omitted). Although a court has broad discretion to enforce compliance with a decree in the face of wilful contempt like Dunn's behavior, "the court must do so without modifying the original judgment that is being enforced." *Darroch v. Willis*, 286 Ga. 566, 570(3) (690 SE2d 410) (2010). Based on this case law, Dunn contends that we must reverse the portion of the order requiring him to remit to Caryn cash as opposed to a QDRO because it is an inappropriate modification of the divorce decree. See *Killingsworth*, 286 Ga. at 236–37(2). The situation in *Killingsworth* does not apply here. Other cases explain that a "trial court may impose additional requirements in a contempt decree made necessary by a party's refusal to obey the court's original order." *Froehlich v. Froehlich*, 297 Ga. 551, 555-56(4) (775 SE2d 534) (2015) (cleaned up) (collecting cases).

There was testimony that Dunn dissipated or otherwise received a distribution from his retirement account or possibly secreted or used the funds between October 2020 and September 2025. Given the evidence that Dunn had already "transmuted,"

"sold," or "relinquished," this asset, "we conclude that 'the relief awarded in the contempt order, made necessary by [Dunn's] refusal to obey the original decree, did not modify that decree but remedied the harm caused by [Dunn's] contemptuous conduct.'" See id. at 556(4) (citation modified).

(d) Dunn maintains that the trial court erred by entering a contempt order that essentially allows Caryn to determine whether he is in contempt or not.

This is an incorrect interpretation of the order. For years now, Dunn has refused to remit any account information regarding his retirement, so the court has been unable to calculate a sum certain. Dunn also failed to file a financial affidavit in the modification proceeding, *which he instigated*, or request that the court consider his ability to pay with regard to the contempt. "It is a well-settled appellate rule that one cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing[.] ... [I]nduced error is not an appropriate basis for claiming prejudice." *Fifadara v. Goyal*, 318 Ga. App. 196, 200(2) (733 SE2d 478) (2012). This enumeration is without merit.

3. In several enumerations of error, Dunn contends that the trial court impermissibly modified his custody by imposing supervised visitation.

"[T]his Court will not interfere [with a custody modification] unless the evidence shows a clear abuse of discretion[.]" *White v. Fana*, 367 Ga. App. 793, 799(1) (888 SE2d 582) (2023) (quotation marks omitted). *Vines v. Vines*, 292 Ga. 550, 551(2) (739 SE2d 374) (2013) ("Under Georgia law, visitation rights are a part of custody.").

(a) Dunn argues that the trial court erred by granting Caryn's request for supervised visitation because she failed to file a counterclaim for custody modification.

OCGA § 19-9-23 precludes a parent from seeking modification of custody or visitation rights unless a counterclaim for such modification is filed. *Pascal v. Pino*, 361 Ga. App. 212, 214–15(1) (863 SE2d 694) (2021) (holding that the father was precluded from seeking to modify custody because he did not request a modification). Nevertheless, Caryn was not seeking a modification of custody or visitation rights in her favor, and in fact, the trial court "kept everything the same" as far as custody and parenting time under the March 26 order. Caryn did not receive any additional parenting time or additional legal custody rights. Compare *Pascal*, 361 Ga. App. at 214–15(1). Moreover, Dunn did not object to Caryn's request for supervised visitation when she requested it at the hearing. Compare id. (explaining that the mother

16

repeatedly objected to the father's requests for modification). Accordingly, this argument is without merit.

(b) Dunn contends that the trial court abused its discretion by imposing supervised visitation without evidence of a material change in circumstance or a proper finding that it was in the best interests of the children.

First, the trial court did not abuse its discretion by finding that a material change in circumstances had occurred or that a supervision requirement was in the best interests of the children. The testimony regarding the harassment by Dunn of school officials between February and May 2025, after the March 26, 2024 order amending the December 2020 final divorce, and the criminal arrest warrant that arose from that harassment, supports the trial court's finding of a material change in circumstance. Compare *Hether v. Campbell*, 374 Ga. App. 320, 323(1) (912 SE2d 349) (2025) (holding that the trial court erred by granting a custody modification despite finding that no material change in circumstance had occurred).

With regard to ordering supervised visitation, the trial court's finding is supported by ample evidence, including the principal's testimony and T. D.'s testimony that Dunn is a pathological liar, has engaged in physical disputes with his

other teenaged son, and has emotionally abused T. D. to the point of necessitating therapy. Cf. *Moon v. Moon*, 277 Ga. 375, 377(4) (589 SE2d 76) (2003) (it was within the trial court's discretion to require supervision of a non-custodial parent's exercise of visitation rights). See also *Vines*, 292 Ga. at 552(2). Accordingly, this enumeration is without merit.

(c) Dunn maintains that the trial court erred by imposing supervised visitation without entering an order that complies with the statutory parenting-plan requirements under OCGA § 19-9-1. "The final decree in any legal action involving the custody of a child, including modification actions, shall incorporate a permanent parenting plan." *McFarlane v. McFarlane*, 298 Ga. 361, 361–63(2) (782 SE2d 29) (2016). Nevertheless, the trial court adopted the previously entered March 26, 2024 parenting plan of supervised visitation by Dunn's parents. Accordingly, we discern no error in the failure to reissue a duplicate parenting plan. See *Williams v. Williams*, 295 Ga. 113, 115(2) (757 SE2d 859) (2014) (no remand necessary because trial court adopted previously entered parenting plan). Compare *McFarland*, 298 Ga. at 361–63(2) (holding that although the trial court did not modify any custody or

visitation provision, entry of a parenting plan was required because none had ever been filed in the case).

(d) Dunn's argument that Caryn was withholding visitation and thus was precluded from "seeking a modification" pursuant to OCGA § 19-9-24 is equally unavailing.

OCGA § 19-9-24(b) provides that

[a] legal custodian shall not be allowed to maintain any action for divorce, alimony, child custody, change of alimony, change of child custody, or change of visitation rights or any application for contempt of court so long as visitation rights are withheld in violation of the custody order.

Based on the hearing testimony, the trial court did not abuse its discretion by finding that any missed visitation was based on Dunn's choice to evade the civil and criminal warrants for his arrest by refusing to travel to Georgia to pick up the children and instead utilizing the grandparents for transportation. Dunn has failed to provide a copy of the March 26 parenting plan, and thus has not shown that Caryn was violating the order by declining to allow the grandparents to facilitate visitation in Alabama. There is no such requirement in the December 15 order.

19

Additionally, aside from physical visitation, T. D. testified that Dunn had not called him in six months despite the fact that the child had his own cell phone. His testimony supports the trial court's finding that it was Dunn, not Caryn, who was the source of the missed visitation. See, e.g., *Willis v. Willis*, 288 Ga. 577, 580(3)(d) (707 SE2d 344) (2010) ("As factfinder, it was the trial court's duty to reconcile seemingly conflicting evidence and to weigh the credibility of witnesses."). Accordingly, this argument is without merit.

(e) To the extent that Dunn contends that the trial court improperly relied on its understanding of the situation from presiding over cases filed by Dunn against the judges in the circuit, among other things, we discern no error. All of the decisions made by the trial court were supported by the evidence presented at the hearing for this particular case.

(f) Dunn argues that the trial court abused its discretion by denying his motion for continuance to secure the testimony of the middle two children, which continuance he did not request until the hearing.

A motion for continuance for a witness is a matter of discretion for the court. See *Davis v. Osinuga*, 330 Ga. App. 278, 280–81(1) (767 SE2d 37) (2014); OCGA §§

9-10-160, 9-10-167(a). Dunn conceded at the hearing that he had not properly subpoenaed the children for the hearing. Moreover, he provided nothing beyond speculation that the other children would provide different testimony from that of the 17-year-old child. See *Davis*, 330 Ga. App. at 280–81(1). Therefore, the trial court did not abuse its discretion by denying his request for a continuance.

4. Finally, Dunn's appeal of this order is frivolous. Given Dunn's history of filing meritless, repetitive actions in an attempt to collaterally attack prior judgments with which he refuses to comply, we hereby assess frivolous appeal penalties in the amount of $10,000 against Dunn. Moreover, because his attorney has misstated the record or applicable law for the second time before this Court, we hereby assess frivolous appeal penalties in the amount of $1,000 against Kevin Mammola. The trial court is DIRECTED to enter a money judgment in this amount in favor of the defendant in this action upon remittitur. See Court of Appeals Rule 7(e)(2), (e)(3).

*Judgment affirmed. Davis, J., and Senior Judge C. Andrew Fuller concur.*