A09A1589. GEICO GENERAL INSURANCE COMPANY
v. WRIGHT et al.
(682 SE2d 369)

BLACKBURN, Presiding Judge.

Douglas Wright and his wife sued a car driver to recover for Wright's injuries suffered in a motor vehicle collision in Georgia. Wright served GEICO General Insurance Company ("GEICO") with

---

[7] *Simmons v. State*, 285 Ga. App. 129, 130-131 (645 SE2d 622) (2007).
[8] *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999).

the lawsuit in an attempt to recover under the uninsured motorist provisions of GEICO's insurance contract (the "Policy") with Wright's parents-in-law, who lived in Florida. GEICO moved for summary judgment, arguing that Wright was not covered by the Policy, which motion the trial court denied. With leave of this Court, GEICO appeals. We reverse, holding that Wright, who lived with his wife in a residence in Georgia, was not a member of the parents-in-law's household in Florida and therefore was not covered by the Policy.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that on June 10, 2006, Wright (a motorcycle mechanic living and working in Augusta, Georgia) was test driving a motorcycle on behalf of his employer when a car failed to yield the right of way and collided with the motorcycle. Wright sued the car driver in Georgia to recover for his injuries, with his wife joined as a plaintiff to recover for loss of consortium. Wright served GEICO with a copy of the complaint in an attempt to recover under the uninsured motorist provisions of the Policy issued to his wife's parents.

GEICO answered, denying that the policy covered Wright's accident and counterclaiming for a declaratory judgment to this effect. After discovery, GEICO moved for summary judgment, which motion the trial court denied. Once the trial court certified the matter for immediate review, we granted GEICO leave to appeal the matter.

GEICO argues that the uninsured motorist provisions of the Policy did not cover Wright's injuries inasmuch as he did not reside in his in-laws' household. We agree.

The parties correctly stipulate that Florida law governs the construction of the Policy, in that the insurance contract was made and delivered to the parents-in-law in Florida. See *Gen. Electric Credit Corp. v. Home Indem. Co.*[2] ("[t]he insurance contract is constructively made at the place where the contract is delivered") (punctuation omitted). As in Georgia, in Florida "[t]he interpreta-

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] *Gen. Electric Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 350 (2) (b) (309 SE2d 152) (1983).

tion of a contract is a matter of law to be determined by the court." *Strama v. Union Fidelity Life Ins. Co.*[3] See *Deep Six, Inc. v. Abernathy*.[4] "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." *Suarez v. Halbert*.[5] "Like other contracts, contracts of insurance should receive a construction that is reasonable, practical, sensible, and just." *Gen. Star Indem. v. West Fla. Village Inn*.[6] Florida construes the contract in favor of the insured "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." Id. at 30.

We discern no such uncertainty or ambiguity here. The contract provided: "Under the Uninsured Motorists coverage we will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance or use of that auto." "Insured" was defined as:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;
(b) relatives of (a) above if residents of his household;
(c) any other person while occupying an insured auto;
(d) any person who is entitled to recover damages because of bodily injury sustained by an insured under (a), (b), and (c) above.

Wright does not claim that he fell under subparagraph (a), nor could he, since the only individuals named on the declarations page were his father-in-law and mother-in-law. He makes a half-hearted attempt to claim that he fell under subparagraph (c) but fails to explain how the motorcycle (not owned by the father-in-law nor by Wright) he was test driving on behalf of his employer was an "insured auto" under the policy. The policy defined "insured auto" as one that was described on the declarations page (this motorcycle was not so described), or one that was operated by the father-in-law or mother-in-law (Wright was operating the motorcycle), or one that was temporarily substituted for an insured automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction (Wright was test driving the motorcycle for his employer). Because subparagraph (d) applied only where one of the

---

[3] *Strama v. Union Fidelity Life Ins. Co.*, 793 S2d 1129, 1132 (Fla. App. 2001).
[4] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).
[5] *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).
[6] *Gen. Star Indem. v. West Fla. Village Inn*, 874 S2d 26, 29 (Fla. App. 2004).

preceding subparagraphs applied, the question before us is whether Wright was an insured under subparagraph (b).

Subparagraph (b) defined an "insured" as relatives of the individual (or his spouse) named in the declarations page if residents of that individual's household. There is no doubt that Wright was related to the parents-in-law who were listed on the declarations page; the question is whether Wright was a resident of their household. We hold that the undisputed evidence shows that under Florida law, Wright was not a resident of their household.

To determine whether one is a resident of the insured's household, Florida law considers three ingredients: "(1) close ties of kinship; (2) a fixed dwelling unit; and (3) enjoyment of each of part of the living facilities. The main thread of a household or family is the sharing of companionship and of the living facilities of the dwelling unit by members of the household." (Punctuation omitted.) *Universal Underwriters Ins. Co. v. Evans.*[7] Here, Wright enjoyed close ties of kinship with his parents-in-law but did not enjoy the living facilities of a fixed dwelling unit with them. Rather, for years he had lived with his wife in a house in Augusta, Georgia, far removed from the house occupied by the parents-in-law in the Florida Keys. At no point had Wright lived with them nor had they lived with Wright. Although Wright and his wife periodically visited the parents-in-law in their Florida home, and although the parents-in-law frequently visited Wright and his wife in their Georgia home, the couples considered such visits as vacation. For example, the parents-in-law used the guest room in the Wrights' home (bringing clothes with them each time), and in no case did the yearly total of their visits exceed eight weeks. The parents-in-law received their mail at their Florida home. Both couples considered their respective residences as their permanent homes. Accordingly, under Florida law, Wright was not a resident of the parents-in-law's household. See *Taylor v. United Svcs. Automobile Assn.;*[8] *Mason v. USAA Cas. Ins. Co.*[9]

Wright argues that because his father-in-law owned the Augusta home, and because his father-in-law paid some of his expenses, this made him a resident of the father-in-law's household. At least three Florida cases have rejected this ownership argument, holding that a relative's ownership of an adult child or nephew's separate home did not make that child or nephew a resident of the relative's household, where the relative maintained a separate permanent residence. See

---

[7] *Universal Underwriters Ins. Co. v. Evans*, 565 S2d 741, 742 (Fla. App. 1990).

[8] *Taylor v. United Svcs. Automobile Assn.*, 684 S2d 890, 891-892 (Fla. App. 1996).

[9] *Mason v. USAA Cas. Ins. Co.*, 438 S2d 1013 (Fla. App. 1983).

*Fla. Residential &c. Assn. v. Anthony;*[10] *Philbin v. American States Ins. Co.;*[11] *Sembric v. Allstate Ins. Co.*[12] *Sembric* noted that an uncle, who lived in Ohio, frequently visited (totaling upward of seven weeks per year) his nephew's home in Florida, but such did not diminish the undisputed evidence that the uncle considered Ohio his permanent home. Supra, 434 S2d at 964. Nor does a relative's payment of an adult child's living expenses at that child's separate home make the child a resident of the relative's household; the key is whether the child had any intent of living in the relative's permanent home. *American Security Ins. Co. v. Van Hoose.*[13] See *State Farm &c. Ins. Co. v. Colon*[14] (adult granddaughter who stayed temporarily with grandfather while waiting for her water-damaged home to be repaired did not become a resident of the grandfather's household under his insurance). The cases cited by Wright are distinguishable in that they involved college students who were living only temporarily away from their parents' homes. See *Dwelle v. State Farm &c. Ins. Co.;*[15] *Seitlin & Co. v. The Phoenix Ins. Co.;*[16] *Travelers Indem. Co. v. McClure.*[17]

Two other cases cited by Wright are also distinguishable. In *Kepple v. Aetna Cas. &c. Co.,*[18] the adult daughter lived under the same roof as her parents, simply in a different section of the house (a converted enclosed carport). She and her spouse, both of whom had a key to the main house, "often used the kitchen, bath, laundry area, and storage facilities in the main house, without requesting permission. They ate most of their meals with the rest of the family." Id. at 221. "While the young couple relocated to another portion of the house for privacy purposes, their relocation to a different section did not alter [the adult daughter's] status as a member of the household." Id. at 222-223.

Similarly, *Row v. United Svcs. Automobile Assn.,*[19] which held an adult son to be a resident of the father's household, involved a mentally-disturbed adult son who lived in an apartment in the apartment building owned by his father. The father paid all of the son's living expenses, and the son was emotionally dependent upon

[10] *Fla. Residential &c. Assn. v. Anthony*, 842 S2d 951, 952 (Fla. App. 2003).

[11] *Philbin v. American States Ins. Co.*, 729 S2d 484, 485 (Fla. App. 1999).

[12] *Sembric v. Allstate Ins. Co.*, 434 S2d 963, 964 (Fla. App. 1983).

[13] *American Security Ins. Co. v. Van Hoose*, 416 S2d 1273, 1275 (Fla. App. 1982).

[14] *State Farm &c. Ins. Co. v. Colon*, 880 S2d 782, 783 (Fla. App. 2004).

[15] *Dwelle v. State Farm &c. Ins. Co.*, 839 S2d 897, 900 (Fla. App. 2003).

[16] *Seitlin & Co. v. The Phoenix Ins. Co.*, 650 S2d 624, 625-626 (Fla. App. 1994).

[17] *Travelers Indem. Co. v. McClure*, 432 S2d 158, 159 (Fla. App. 1983).

[18] *Kepple v. Aetna Cas. &c. Co.*, 634 S2d 220 (Fla. App. 1994).

[19] *Row v. United Svcs. Automobile Assn.*, 474 S2d 348, 350-351 (Fla. App. 1985).

his father. Id. The father also lived in one of the apartments, which apartment the son used extensively "for socializing, eating and cooking, using the telephone, doing laundry, and bathing." Id. at 350.

> In short, the undisputed evidence establishe[d] the sharing of companionship and living facilities of the dwelling unit essential to the concept of a family household. The fact that [the son] was physically staying in a separate apartment from his father is, *under the unique circumstances shown here*, of no legal consequence.

(Emphasis supplied.) Id. at 351.

Wright points to a document entitled "Verification of Coverage" as evidence that the policy was modified to include him as an insured (if not at least a resident of the household), because that GEICO document stated that Wright was "an active driver on this policy." However, this form only confirmed that when visiting the parents-in-law, Wright would often drive one of their insured vehicles (and thus per the policy terms was an "insured" as a permissive driver when driving that vehicle). The document did not purport to amend the policy in any way, and in fact on its face expressly stated: "This verification of coverage does not amend, extend or alter the coverage afforded by this policy." Moreover, even if the document did amend the policy, the document was dated November 2007, over one year after the accident at issue, and thus would have no relevance to the coverage at issue here.

The trial court erred in denying GEICO's motion for summary judgment.

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED JULY 17, 2009.

*Cruser & Mitchell, Joseph R. Cruser, Craig P. Terrett*, for appellant.
*Fulcher Hagler, Sonja R. Tate*, for appellees.