**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1509, A12A1510. MIKE LAYER v. CLIPPER PETROLEUM, INC.; and vice versa.

MILLER, Presiding Judge.

Mike Layer sued Clipper Petroleum, Inc. to recover unpaid commissions and cash advances under a supply contract and two related contracts providing for the sale and delivery of petroleum products to a gas station.[1] Layer raised claims for breach of contract, quantum merit, breach of the implied covenant of good faith and fair dealing, punitive damages and attorney fees under OCGA § 13-6-11. Clipper Petroleum denied liability for Layer's claims and counterclaimed for breach of contract, lost profits, unjust enrichment and attorney fees under OCGA § 13-1-11 and OCGA § 13-6-11. Following discovery, both parties filed cross-motions for summary

---

[1] All cites to the record are from A12A1509 unless otherwise stated.

judgment. The trial court denied Layer's motion for partial summary judgment. The trial court partially granted and partially denied Clipper Petroleum's motion for summary judgment.

The instant cross-appeals ensued. In Case No. A12A1509, Layer contends that the trial court erred in (1) concluding that no material issues exist as to whether the related contracts could have survived foreclosure of the property; (2) applying the theory of anticipatory repudiation to the facts of the case; and (3) failing to grant partial summary judgment to Layer for damages due under the related contracts. In Case No. A12A1510, Clipper Petroleum contends that it was entitled to summary judgment on (1) Layer's claims for compensatory damages under the related contracts prior to the foreclosure; (2) Layer's claims for breach of the implied covenant of good faith and fair dealing, attorney fees and punitive damages; and (3) its counterclaims. We affirm the trial court's rulings in Case No. A12A1509. We affirm in part and reverse in part the trial court's rulings in Case No. A12A1510, since the trial court erred in failing to grant summary judgment to Clipper Petroleum on Layer's breach of contract claim for cash advances, his claim for breach of the implied contract of good faith and fair dealing with regard to payment of cash advances, and his punitive damages claim.

2

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a [grant or] denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and footnote omitted) *Geico Gen. Ins. Co. v. Wright*, 299 Ga. App. 280 (682 SE2d 369) (2009).

So viewed, the evidence shows that Clipper Petroleum is a petroleum supplier that provides gasoline to operators of retail gasoline stations and convenience stores. Clipper Petroleum entered into a supply contract (the "Supply Contract") with Layer's parents, which provided for the sale and delivery of Exxon branded petroleum products to their gasoline station. Clipper Petroleum, Layer's parents, and Layer also entered into a Cash Advance Agreement, which provided for cash advances, including $.03 per gallon on all gasoline delivered for four years, and the costs of branding the station as an Exxon Franchise. Clipper Petroleum, Layer and Layer's parents (collectively "the Layers") also entered into a Purchaser Commission Agreement, providing for the payment to Layer of $.005 for each gallon of gasoline purchased and paid for by the operator of the property. The Cash Advance Agreement

and the Purchaser Commission Agreement (collectively the "Related Contracts") incorporated the Supply Contract by reference. The Layers secured construction loans on the property, and built an Exxon-branded gas station and convenience store. The new gas station opened around November or December 2004, and Clipper Petroleum began supplying petroleum to the gas station pursuant to the parties' agreements. Clipper Petroleum paid Layer $1,605.67 under the Purchaser Commission Agreement based on the sale of gasoline through July 2005. Clipper Petroleum never advanced any cash to Layer under the Cash Advance Agreement.

In 2005, the loans on the property went into default, and the bank took over management of the property. After receiving the default notice, Clipper Petroleum stopped making payments on the Related Contracts. The bank foreclosed on the property in October 2005, and sold the property to a new owner.

Layer sued Clipper Petroleum to recover unpaid commissions and cash advances under the Related Contracts. Layer filed a motion for summary judgment as to his claims for breach of the Related Contracts only. Clipper Petroleum filed a motion for summary judgment on all of Layer's claims and its counterclaims.

The trial court denied Layer's motion for partial summary judgment. The trial court partially granted Clipper Petroleum's motion for summary judgment, finding

4

that the Related Contracts did not survive the foreclosure of the gas station. The trial court also granted summary judgment to Clipper Petroleum on Layer's quantum meruit claim, finding that the issue of repayment was governed by the parties' express contract. The trial court partially denied summary judgment to Clipper Petroleum finding that a factual issue remained as to whether the Layers' failure to stay current on the property loans amounted to an unqualified repudiation of the Supply Contract prior to foreclosure of the property. The trial court also denied Clipper Petroleum summary judgment on Layer's claim for breach of the implied covenant of good faith and fair dealing under the Related Contracts to the extent that claim applied to the period of time prior to the foreclosure. The trial court denied summary judgment to Clipper Petroleum on Layer's claims for punitive damages and attorney fees, finding that summary judgment as to those counts would be premature. The trial court denied summary judgment to Clipper Petroleum on its counterclaims. The trial court issued a certificate of immediate review, which this Court granted.

*Case No. A12A1509*

1. Layer contends that the trial court erred in granting partial summary judgment to Clipper Petroleum on his claims for breach of the Related Contracts since

5

genuine issues of fact existed as to whether the Related Contracts could have survived the foreclosure of the property. We disagree.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation, punctuation and emphasis omitted.) *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 306 (1) (732 SE2d 449) (2012). The Supply Contract pertinently provided:

> (1) **Sales of Petroleum Products.** During the term of this Agreement the Supplier [(Clipper Petroleum)] shall sell and deliver to Purchaser [(Layer's parents)] motor gasoline, diesel fuel, kerosene, and other petroleum products (hereinafter collectively called "Products") as hereinafter described. Supplier shall be the exclusive supplier of Products to Purchaser during the terms of this agreement. Purchaser covenants and agrees to offer for sale at the ["Property"] only such Products as are supplied and delivered by Supplier for the full duration of the term of this Agreement[.]

> (2) **Term.** The term of this Agreement shall be for a period of ten years[.]

> (3) **Delivery.** All Products sold under this Agreement shall be delivered by Supplier to the storage tanks at the Property located at 1296 Atlanta Hwy, Auburn, Georgia, 30011.

The Cash Advance Agreement pertinently provided:

1. *Supply Contract*. Supplier and Purchaser have entered into a Petroleum Product Supply Agreement ("Supply Contract") for the supply of motor fuel products ("Products") to Purchaser's retail outlet located at 1296 Atlanta Hwy, Auburn, Ga. 30011 (the "Property").

2. *Cash Advance*. Supplier agrees on the terms and conditions hereof, to pass through the Supplier's Brand Incentive Program Payments/Rebates to Purchaser's Designee [(Layer)]. . . .The Cash Advance shall be paid to Purchaser's Designee within thirty (30) days of receipt of such funds by Supplier from [its] Brand.

3. *Repayment*. The Cash Advance shall be repaid as follows:

Purchaser shall receive a credit against the outstanding Cash Advance balance in the amount of 100% of the Cash Advance at the end of the full ten (10) year period from the first month of volume submission to Supplier's Brand for the Cash Advance during which the Purchaser is a branded dealer supplied by Supplier at the Property pursuant to the Supply Contract. Purchaser shall immediately repay to Supplier the entire Cash Advance balance at any time within ten (10) years of the first month of volume submission to Supplier's Brand for the Cash Advance, upon the occurrence of any of the following events:

(1) For any reason, Purchaser's current or any future Supply Contract with Supplier for the Property is terminated, not

7

renewed or assigned without the express written consent of Supplier.

. . .

(3) Purchaser fails to perform any other obligation under this Agreement or the Supply Contract.

The Purchaser Commission Agreement pertinently provided:

1. *Supply Contract*. Supplier and Purchaser have entered into a Petroleum Product Supply Agreement of even date herewith (hereinafter, the "Supply Contract" for the supply of Exxon or other branded motor gasoline to Purchaser's retail convenience store outlet located at 1296 Atlanta Hwy., Auburn, Georgia in Barrow County, Georgia[.]

2. *Commission to Purchaser*. So long as this Agreement has not been terminated and no event of default exists under the Supply Contract or this Agreement, for the entire term. . .of the Supply Contract, for each and every gallon of gasoline purchased and paid for by the then operator of the Property, Purchaser's Designee (and *not* the then-current operator of the Property, if different from Purchaser) shall receive from Supplier the sum of One-Half Cent ($.005) per gallon for each gallon of gasoline sold by Supplier to the operator and paid for by the operator of the Property pursuant to the Supply Contract (such amount is referred to as the "Commission"). Supplier shall made all Commission payments pursuant to this paragraph on a

8

monthly basis (no later than the thirtieth (30th) day of the month for the previous month's sales to the Property).

. . .

4. The term of this Agreement shall be deemed to be co-extensive with the term of the Supply Contract.

"Where the language of a contract is plain and unambiguous, . . .no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." (Citations and punctuation omitted.) *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200-201 (1) (633 SE2d 555) (2006); see also *Canton Plaza*, supra, 315 Ga. App. at 308-309 (3) (the contract alone is looked to where the language is clear and unambiguous).

The trial court found that the Supply Contract was breached when the Layers lost the property in foreclosure because the foreclosure made it impossible for Clipper Petroleum to supply gasoline to the Layers' gas station pursuant to the Supply Contract. The trial court concluded that, as a result of the breach, Clipper Petroleum's obligations to make payments under the Related Contracts ended since those contracts were dependent upon gasoline deliveries to the property.

The Related Contracts clearly and unambiguously provided that Clipper Petroleum's obligations thereunder were contingent upon the Layers' performance under the Supply Contract. In turn, the Supply Contract required the Layers to order and accept delivery of petroleum products to the Layers' gas station for a 10-year period. Notably, both the Cash Advance Agreement and the Purchaser Commission Agreement, incorporated the Supply Contract by reference. The Cash Advance Agreement specifically obligated the Layers to repay immediately any cash advances they received if the Supply Contract was terminated or they failed to perform any of their obligations under the Supply Contract. The term of the Purchaser Commission Agreement was co-extensive with the term of the Supply Contract, and the Purchaser Commission Agreement provided for the payment of commissions to Layer only if the Supply Contract had not been terminated and no default under the Supply Contract existed.

When the property was foreclosed upon in October 2005, the Layers lost their possessory rights to the property. See, e.g. *Bradley v. JPMorgan Chase Bank*, 289 Ga. App. 704, 705 (658 SE2d 240) (2008); *Bellamy v. Federal Deposit Insurance Co.*, 236 Ga. App. 747, 750-751 (1) (512 SE2d 671) (1999). More importantly, when they lost their possessory rights to the property, the Layers became unable to perform

under the Supply Contract.[2] The new owner of the property had the right to use it for any lawful purpose and was not bound by the terms of the Supply Contract, which created personal obligations between the parties that did not run with the land. See *Copelan v. Acree Oil Company*, 249 Ga. 276, 277-278 (2) (290 SE2d 94) (1982) (lease agreement providing for supply of wholesale petroleum products to former owner's gas station created no estate for years or interest in the land, so wholesale petroleum distributor had no right to use the property following its foreclosure and sale.)

Layer argues that foreclosure of the property could have been prevented if Clipper Petroleum had timely made payments under the Related Contracts. Clipper Petroleum's failure to make any payments under the Related Contracts, however, did not excuse Layer's failure to meet his payment obligations under his loan. Thus, the trial court properly found that the foreclosure effectively terminated the Supply Contract, which in turn, ended Clipper Petroleum's obligation to make any payments to Layer under the Related Contracts.

---

[2] The fact that the gas station on the property continued to operate after the foreclosure does not change our analysis because any sales of gasoline after foreclosure of the property were not made as a result of the Supply Contract at issue.

11

2. Layer contends that the trial court erred in finding that a question of fact existed as to whether the theory of anticipatory repudiation applied in this case. Again, we disagree.

> The anticipatory repudiation of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. Thus when one party to a bilateral contract of mutual dependent promises absolutely refuses to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part. The breach which will form the basis for an anticipatory breach of contract action is an unqualified repudiation of the entire contract prior to the time of performance.

(Citation, punctuation and emphasis omitted.) *Coffee Butler Svc., Inc. v. Sacha*, 258 Ga. 192, 193 (1) (366 SE2d 672) (1988). It is ordinarily a question for the trier of fact as to whether a party to a contract engaged in conduct sufficient to give rise to a repudiation of the contract and amount to an anticipatory breach. See *Jones v. Solomon*, 207 Ga. App. 592, 594 (1) (1993).

When the Layers defaulted on their loan payments, they lost management control over the property prior to the foreclosure. A jury could find that the Layers' loss of management control over the property prior to the foreclosure resulted in an

12

anticipatory breach since the Layers could no longer perform their obligations under the Supply Contract. Cf. *Esquire Carpet Mills, Inc. v. Kennesaw Transp., Inc.*, 186 Ga. App. 367, 370 (3) (367 SE2d 569) (1988) (a jury question remained regarding whether the appellant's late payment under the parties' agreement, together with other information available to the appellee, constituted a repudiation of the contract, sufficient to amount to anticipatory breach). A jury could also find that the anticipatory breach occurred prior to the time when Clipper Petroleum's obligations to advance any monies under the Cash Advance Agreement,[3] or make any additional monthly commission payments under the Purchaser Commission Agreement came due.

Thus, the trial court did not err in finding that a question of fact remained as to whether the Layers' default on their loans amounted to an unqualified repudiation of the Supply Contract prior to the foreclosure.

---

[3] The Cash Advance Agreement provided for payment of cash advances from Clipper Petroleum to Layer within 30 days of receipt of such funds from Exxon. Clipper Petroleum received the designated funds from Exxon after the Layers' defaulted on their loan.

13

3. Layer contends that the trial court erred in failing to enter partial summary judgment in his favor for damages owed by Clipper Petroleum under the Related Contracts. His contentions are without merit.

(a) The provisions of the Cash Advance Agreement clearly provided that any funds advanced to Layer ultimately were required to be repaid by Layer over the course of the Supply Contract. The cash advances were immediately repayable if the Supply Contract was terminated. As discussed above, the foreclosure terminated the Supply Contract. Since Layer would have been required to repay any cash advances upon termination of the Supply Contract, he has not shown that he was damaged by Clipper Petroleum's failure to make the cash advances. Therefore, the trial court properly denied summary judgment to Layer on his claim for damages under the Cash Advance Agreement.

(b). The Purchaser Commission Agreement required Clipper Petroleum to pay Layer $.005 per gallon, on a monthly basis, for each gallon of gasoline purchased and paid for by the operator of the property, as long as no event of default existed under the Supply Contract. Clipper Petroleum paid Layer $1605.67 under the Purchaser Commission Agreement based on the sale of gasoline through July 2005, but made no further payments under this contract.

14

Clipper Petroleum's obligation to pay Layer commissions under the Purchaser Commission Agreement ended when the Supply Contract was terminated by the October 2005 foreclosure. Cf. *Fernandes v. Manugistics Atlanta, Inc.*, 261 Ga. App. 429, 433 (2) (582 SE2d 499) (2003) (holding that a former employee was entitled to only those commissions that he both earned and that were payable up to and including the date of his termination). Clipper Petroleum, however, stopped making payments under the Purchaser Commission Agreement in July 2005. As stated in Division 2 above, a question of fact exists regarding whether an anticipatory breach of the Supply Contract occurred prior to the time when Clipper Petroleum's obligations to make any additional monthly commission payments under the Purchaser Commission Agreement came due. Thus, the trial court properly denied Layer's motion for partial summary judgment on his claims for damages under the Purchaser Commission Contract.

*Case No. A12A1510*

4. Clipper Petroleum contends that it was entitled to summary judgment on Layer's claims for damages under the Cash Advance Agreement prior to the foreclosure. We agree.

15

As explained in Division 3 (a) above, the evidence showed that the foreclosure terminated the Supply Contract, and the Cash Advance Agreement required the Layers to repay immediately the entire cash advance balance upon termination of that contract. Since the undisputed evidence shows that Layer was not entitled to prevail on his claim for damages under the Cash Advance Agreement, Clipper Petroleum was entitled to summary judgment on this issue. The trial court's decision must be reversed on this ground.

5. Clipper Petroleum contends that it was entitled to summary judgment on Layer's claim for damages under the Purchaser Commission Agreement prior to the foreclosure. We disagree.

For the reasons previously explained in Division 3 (b) above, a question of fact remains regarding whether Layer was entitled to commissions for the sale of gasoline between the end of July 2005 and the October 2005 foreclosure of the property. It thus follows that the trial court properly denied summary judgment to Clipper Petroleum on this issue.

6. Clipper Petroleum contends that it was entitled to summary judgment on Layer's claim for breach of the implied covenant of good faith and fair dealing under

16

the Related Contracts for the period of time prior to the foreclosure.[4] We agree in part, and reverse the trial court's denial of summary judgment to Clipper Petroleum to the extent this claim related to Layer's claim for damages under the Cash Advance Agreement.

"Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement." *Secured Realty & Investments, Inc. v. Bank of North Ga.*, 314 Ga. App. 628, 630 (1) (b) (725 SE2d 336) (2012). "The implied covenant modifies and becomes part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions that it modifies and therefore cannot provide an independent basis for liability." *Myung Sung Presbyterian Church, Inc. v. North American Assoc. of Slavic Churches & Ministries*, Inc., 291 Ga. App. 808, 810 (2) (662 SE2d 745) (2008). Since Layer could not prevail on his claims under the Cash Advance Agreement, he likewise could not prevail on his claim for breach of the implied covenant premised on the Cash Advance Agreement. Clipper Petroleum was entitled to summary judgment on that ground.

---

[4] The trial court granted summary judgment to Clipper Petroleum on Layer's claim for breach of the implied covenant of good faith and fair dealing for the period of time after the foreclosure.

However, as we explained in Division 3 (b) above, a question of fact remains regarding whether Clipper Petroleum was obligated to pay Layer commissions under the Purchaser Commission Agreement for the sale of gasoline between the end of July 2005 and the October 2005 foreclosure of the property. Thus, the trial court properly denied summary judgment to Clipper Petroleum to the extent his claim for breach of the implied covenant of good faith and fair dealing applied to the Purchaser Commission Agreement for the time period prior to the foreclosure. See *Techbios, Inc. v. Champagne*, 301 Ga. App. 592, 595 (1) (688 SE2d 378) (2009) (plaintiff adequately set forth a claim for breach of contract, and duties imposed under that contract served as a sufficient basis for the plaintiff's claim for breach of the implied covenant of good faith and fair dealing).

7. Clipper Petroleum further contends that it was entitled to summary judgment on Layer's claim for attorney fees under OCGA § 13-6-11. We discern no error.

OCGA § 13-6-11 provides that

[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

18

"Questions concerning bad faith under this statute are generally for the jury to decide, and the trial court may grant judgment as a matter of law on such issues only in the rare case where there is absolutely no evidence to support the award of expenses of litigation." (Citation and punctuation omitted) *Hewitt Assoc., LLC v. Rollins, Inc.*, 308 Ga. App. 848, 853 (3) (2011). Summary judgment on Layer's claim for attorney fees would be premature because his claim for breach of the Purchaser Commission Agreement prior to foreclosure of the property and his claim for breach of the implied covenant of good faith and fair dealing as it relates to that contract remain pending. Thus, the trial court properly denied summary judgment to Clipper Petroleum on Layer's claim for attorney fees.

8. Clipper Petroleum also contends that it was entitled to summary judgment on Layer's claim for punitive damages. Since Clipper Petroleum's claim has merit, we reverse the trial court's judgment on this ground.

OCGA § 13-6-10 provides that punitive damages are not recoverable in contract cases. This is true, even if the refusal to pay is made in bad faith. See *Horne v. Drachman*, 247 Ga. 802, 808-809 (6) (280 SE2d 338) (1981). "In certain rare situations, where the breach of contract entails an act of fraud, punitive damages may be imposed." *Parsells v. Orkin Exterminating Co.*, 172 Ga. App. 74, 76 (322 SE2d

19

91) (1984). Layer's complaint for breach of contract, quantum meruit and breach of the applied covenant of good faith and fair dealing raised contract claims only. Layer pointed to no evidence of fraud. Thus, he was not entitled to punitive damages. See, e.g. *Parsells, supra,* 172 Ga. App. at 76. (punitive damages not available where appellant failed to demonstrate a cause of action in fraud).

9. Lastly, Clipper Petroleum contends that it was entitled to summary judgment on its counterclaim for breach of the Related Contracts. We discern no error.

Clipper Petroleum argued that it was entitled to reimbursement of monies it paid to Layer under the Related Contracts prior to the foreclosure of the property, and that Layer's retention of those monies constituted unjust enrichment. However, the theory of unjust enrichment does not lie where there is an express contract. See *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 452 (4) (571 SE2d 454) (2002). Furthermore, the undisputed evidence showed that Clipper Petroleum did not suffer damages under the Cash Advance Agreement since it never paid any cash advances. The evidence also showed that Clipper Petroleum only paid Layer commissions under the Purchaser Commission Agreement based on the sale of gasoline through July 2005. Clipper Petroleum's alleged entitlement to reimbursement of any of the commissions it paid under the Purchaser Commission Agreement depends on the factual issue of whether

Layer breached the Supply Contract and the Related Contracts prior to the foreclosure of the property. Clipper Petroleum also counterclaimed for attorney fees and expenses under OCGA § 13-6-11. Whether Clipper Petroleum is entitled to recover its litigation expenses under this statute is a matter for the jury to decide. See *Hewitt*, supra, 308 Ga. at 853 (3). For the foregoing reasons, the trial court properly denied summary judgment to Clipper Petroleum on its counterclaims.

In sum, we affirm the denial of summary judgment to Layer. We affirm the grant of summary judgment to Clipper Petroleum on Layer's claims for breach of contract and breach of the implied covenant of good faith and fair dealing for the period of time after the foreclosure of the property. We affirm the denial of summary judgment to Clipper Petroleum on its counterclaims, Layer's claim for breach of the Purchaser Commission Agreement and Layer's claim for breach of the implied covenant of good faith and fair dealing as it relates to that contract for the period of time prior to the foreclosure. We reverse the denial of summary judgment to Clipper Petroleum on Layer's punitive damage claim, Layer's claim for breach of the Cash Advance Agreement and Layer's claim for breach of the implied covenant of good faith and fair dealing as it relates to the Cash Advance Agreement.

21

*Judgment affirmed in A12A1509, and affirmed in part and reversed in part in A12A1510. Ray and Branch concur.*