**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2018**

# In the Court of Appeals of Georgia

A17A2102. LEGACY ACADEMY, INC. v. DOLES-SMITH
    ENTERPRISES, INC.

REESE, Judge.

This appeal arises from an adverse ruling on Legacy Academy, Inc.'s claim against its franchisee, Doles-Smith Enterprises, Inc. ("DSE"), for unpaid royalty and advertising fees. The trial court conducted a bench trial and ruled that Legacy's claim was barred by the doctrine of res judicata. This appeal followed. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the trial court's findings of fact,[1] the evidence shows that Legacy is a franchisor of child daycare centers, and it entered

---

[1] See *Realty Lenders v. Levine*, 286 Ga. App. 326, 326-327 (649 SE2d 333) (2007).

into a 25-year franchise agreement with DSE in November 2006.[2] In addition to funds paid up-front to Legacy by DSE for the franchise, start-up assistance, etc., the agreement required DSE to pay Legacy five percent of DSE's gross revenue each month for royalty fees and one percent of gross revenue each month for advertising fees throughout the 25-year term of the agreement.

DSE operated the daycare center in Atlanta until August 2012, when it sent a letter to Legacy stating that it was terminating its relationship with Legacy due to Legacy's fraudulent behavior, Legacy's loss of essential personnel, and Legacy's "despicable conduct" in dealing with its franchisees, all of which DSE claimed had seriously impaired the value of the Legacy Academy brand name. DSE stopped paying the monthly royalty and advertising fees and informed Legacy that it would be removing all signage and other marks affiliating the center with Legacy by August 10. Legacy concedes that these actions constituted DSE's repudiation of the franchise agreement.

---

[2] Additional facts are discussed in a previous appeal in a related suit between the parties, *Legacy Academy v. Doles-Smith Enterprises*, 337 Ga. App. 575 (789 SE2d 194) (2016) ("*Doles-Smith Enterprises*").

*The First Suit*

In addition to sending the letter to Legacy, DSE filed suit against Legacy for, inter alia, negligent misrepresentation and violation of federal franchise rules ("the first suit").[3] In response to DSE's letter and the first suit, Legacy immediately stopped providing to DSE the services outlined in Section 5.2 of the franchise agreement, as well as any other assistance or support Legacy had been providing since the execution of the agreement.[4] Legacy answered the lawsuit and filed a counterclaim asserting that DSE had breached the agreement. As a result of this breach, Legacy sought unpaid royalty and advertising fees "in an amount to be determined at trial."[5] The counterclaim also stated that the franchise agreement was effective for 25 years,

---

[3] See id. at 577-578.

[4] It is undisputed that, among other things, Legacy deleted information about DSE's daycare center from the franchise's main website; stopped hosting DSE's website; cancelled DSE's franchise-provided e-mail address; stopped sending newsletters, curriculum updates, and other management information to DSE; stopped performing teacher training; stopped notifying DSE of franchise management and educational meetings; and stopped performing periodic inspections and quarterly audits.

[5] Because the only part of the first suit that is relevant to the instant case is the counterclaim for unpaid fees, there is no need to address the remainder of the complaint or counterclaim in the first suit, the court's judgment thereon, or this Court's ruling on those issues on appeal.

3

beginning in November 2006, and that it was seeking an award of "all sums owed under the Franchise Agreement, including all unpaid Royalty and [Advertising] Fees[.]"

Subsequently, in a response to a motion to compel filed by DSE, Legacy asserted that the information sought by DSE was only relevant to "Legacy's claim for *future damages, which will only be an issue when and if this matter goes to trial.*"[6] And, in a proposed pre-trial order, Legacy clarified the damages it was seeking, stating that, as a result of DSE's default and breach of the franchise agreement, "DSE owes to Legacy Academy an amount to be proven at trial (for both royalty and advertising fees) *both to date and through the term of the Agreement*[.]"[7]

On November 20, 2014, however, after the filing of Legacy's counterclaim in the first suit, but before the jury trial, this Court issued an opinion in *Legacy Academy, Inc. v. JLK, Inc.*,[8] a separate, but similar, breach-of-contract case involving Legacy and a different franchisee. As in the instant case, the franchisee, JLK, sent

---

[6] (Emphasis supplied.)

[7] (Emphasis supplied.) For reasons that are not apparent, neither party filed the proposed pre-trial order in the trial court.

[8] 330 Ga. App. 397 (765 SE2d 472) (2014).

4

Legacy a letter stating that JLK was terminating the franchise agreement.[9] In response, Legacy stopped communicating with or providing services to JLK, and it sued JLK for unpaid royalty and advertising fees for previous months, as well as unaccrued fees that would have been due from JLK in the future, i.e, for the remainder of the 20-year agreement.[10] Following a bench trial, the court entered judgment for $9,729 in favor of Legacy for past unpaid royalty fees (plus interest and attorney fees), but nothing on the claims for the future, unaccrued royalty and advertising fees.[11] On appeal, this Court ruled that, even though Legacy was authorized to pursue its claim for the future royalty and advertising fees in that suit,[12] Legacy had failed to present sufficient competent evidence at trial to prove the value of the royalty fees.[13] Consequently, under the doctrine of res judicata,[14] Legacy was permanently precluded from recovering the future, unaccrued royalty fees.

_____

[9] Id. at 398.

[10] Id. at 397-398.

[11] Id.

[12] Id. at 398-402 (1), 406 (3).

[13] Id. at 402-405 (2). This Court remanded the claim for future advertising fees back to the trial court. Id. at 406 (3).

[14] See generally Division 2, infra.

5

Then, in February 2015, about three months after this decision was issued, the jury trial on the first suit in the instant case commenced. On the first day of trial, Legacy abruptly abandoned its claim against DSE for the royalty and advertising fees that would have become due under the franchise agreement from January 2015 through November 2031 (hereinafter, "future fees"). Legacy announced for the first time that it was not seeking those future fees but, instead, was only seeking unpaid fees from August 2012 through December 2014. Legacy's counsel added: "I just wanted to make sure [this decision] was on the record because it may serve [sic] important later."

Following the jury trial on the first suit, the court issued a judgment in favor of DSE on its misrepresentation and negligence claims and in favor of Legacy on its counterclaim.[15] Legacy appealed the judgment to this Court, and DSE cross-appealed.[16]

### The Second Suit

In May 2015, while those appeals were still pending, Legacy filed the instant suit against DSE ("the second suit"), claiming that DSE had breached the franchise

---

[15] *Doles-Smith Enterp.*, 337 Ga. App. at 575.

[16] Id. at 575-576.

agreement by failing to pay royalty and advertising fees for two months, January and February 2015, and seeking those fees, plus 18 percent interest, a $200 administrative fee, and attorney fees. In response, DSE argued, inter alia, that the claim was barred by res judicata. Further, in a motion for partial summary judgment, DSE argued that

> Legacy's claim for breach of the Franchise Agreement in this action will inevitably be barred by res judicata. DSE anticipatorily repudiated the Franchise Agreement. Legacy responded by electing to treat that repudiation as an immediate breach that suspended its reciprocal performance obligations and accelerated DSE's *future* obligations to pay royalty and advertising fees to Legacy. Indeed, Legacy sued DSE for such *future* damages in the [first suit]. While Legacy abandoned its prayer for those [future] damages the morning of the trial in the [first suit], this issue plainly could have been litigated in the [first suit]. As a result, once the pending appeals are decided – no matter the outcome – res judicata will attach and bar Legacy's claim for unpaid royalty and advertising fees in this action.[17]

The trial court denied DSE's motion for partial summary judgment, however, ruling that "[t]here exists a question of material fact as to [Legacy's] choice of remedy when [DSE] anticipatorily repudiated the [franchise agreement]."

---

[17] (Emphasis in original.)

7

In March 2017, the court conducted a bench trial on Legacy's suit for unpaid fees from January and February 2015. At the conclusion of the trial, the court found that DSE's 2012 actions in notifying Legacy that it was terminating the contract, removing Legacy signage, etc., and then filing suit against Legacy constituted DSE's anticipatory repudiation of the franchise agreement. The court also found that, in response to DSE's actions, Legacy stopped providing DSE with any services under the agreement and concluded that, under the totality of the circumstances, Legacy had accepted DSE's actions as a breach of the entire 25-year contract. Consequently, according to the court, when Legacy filed a counterclaim for damages from that breach in the first suit, that counterclaim was for a breach of the entire agreement and there was "nothing left after that lawsuit to sue under." As a result, the court ruled that Legacy's claim in the second suit was barred by the doctrine of res judicata. This appeal followed.

"Appeals from bench trials, where the trial judge sits as the trier of fact and has the opportunity to assess the credibility of the witnesses, are reviewed under the clearly erroneous standard. And we will not disturb a trial court's findings if there is

8

any evidence to support them."[18] With these guiding principles in mind, we turn now to Legacy's specific claims of error.

Legacy contends that the trial court erred in finding as a matter of fact that it had accepted DSE's repudiation of the franchise agreement and that it had elected to treat the repudiation as a breach of the entire agreement. It argues that, as a result, the court erred in denying its motion for a directed verdict[19] as to DSE's res judicata defense.

1. "The anticipatory repudiation of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance

---

[18] *Allen v. Santana*, 303 Ga. App. 844, 845 (695 SE2d 314) (2010) (punctuation and footnote omitted).

[19] In its brief, Legacy refers to its motion for a directed verdict as a "request for involuntary dismissal," citing *Magnus Homes v. DeRosa*, 248 Ga. App. 31 (1), n. 2 (545 SE2d 166) (2001) ("In a bench trial, where there is no verdict by a jury, a motion for directed verdict is treated as a request for involuntary dismissal under OCGA § 9-11-41 (b).") (citation omitted). In *Magnus Homes*, however, the movant for a directed verdict was the defendant, who sought judgment as a matter of law on the plaintiff's claims against it. Id. at 31 (1). Thus, a directed verdict in favor of the defendant would have had essentially the same effect as an involuntary dismissal of the plaintiff's claims. In contrast, in this case, Legacy was the plaintiff seeking a directed verdict on its claims against DSE – not the involuntary dismissal of its claims.

9

is required under the terms of the contract."[20] The repudiation must apply to the entire contract and must include an unqualified refusal to fulfill any future obligations under the contract.[21] "It is ordinarily a question for the trier of fact as to whether a party to a contract engaged in conduct sufficient to give rise to a repudiation of the contract and amount to an anticipatory breach."[22] Here, as Legacy concedes, there was more than sufficient evidence to support the court's finding that DSE's actions in August 2012 constituted an unqualified anticipatory repudiation of the entire franchise agreement.

When presented with DSE's repudiation of the agreement, Legacy had to choose from three options as to how it was going to respond. It could (1) rescind the contract altogether and, if it had already rendered any performance under the contract, recover its value on principles of quasi-contract; (2) treat the repudiation as a breach of the entire agreement and bring an action for damages; or (3) continue to fulfill its obligations under the agreement while waiting for the time for performance of the

---

[20] *Layer v. Clipper Petroleum*, 319 Ga. App. 410, 416 (2) (735 SE2d 65) (2012) (citation and punctuation omitted).

[21] See id.

[22] Id. at 416-417 (2) (citation omitted).

contract and then bring suit after the time has arrived.[23] If Legacy chose either the first or second option, it would have been relieved of its obligation to continue performing under the franchise agreement, but if it chose the third option, it would be required to continue performing under the agreement, regardless whether DSE fulfilled its obligations.[24]

As shown above, it is undisputed that Legacy did not seek rescission of the agreement under the first option. It is also undisputed that, after receiving DSE's

---

[23] *Piedmont Life Ins. Co. v. Bell*, 103 Ga. App. 225, 234-235 (3) (119 SE2d 63) (1961).

[24] See *Concrete Materials of Ga. v. Smith & Plaster Co.*, 127 Ga. App. 817, 825 (5) (195 SE2d 219) (1973) ("[W]here, in a continuing contract, one side refuses to perform, the other may accept the tender of the breach of contract, refuse to perform further and sue for damages, but if he does not do so the contract continues in effect as to the obligations of both parties.") (citation omitted).
To the extent Legacy relies on dicta from this Court's ruling in *Nikas v. Hindley*, 98 Ga. App. 437, 441 (106 SE2d 335) (1958), for the proposition that it was completely excused from performing once DSE repudiated the agreement, the record shows that Legacy failed to raise this argument or cite to this authority in the trial court. Consequently, pretermitting whether the argument had merit, it was waived. See *City of Dalton v. Smith*, 210 Ga. App. 858, 859 (1) (437 SE2d 827) (1993) ("[O]n appeal only issues properly raised before the trial court will be considered.") (citations and punctuation omitted); see also *Magnus Homes*, 248 Ga. App. at 33 (2) ("A motion for directed verdict shall state the specific grounds therefor. By the great weight of authority, one appealing the denial of a motion for directed verdict may not raise for the first time on appeal a ground not specifically raised in the original motion.") (punctuation and footnotes omitted).

11

August 2012 repudiation letter, Legacy took numerous affirmative actions to sever ties with DSE, such as removing DSE's information from the franchise website, cancelling DSE's website and e-mail address, and discontinuing required inspections and staff training; in fact, Legacy stopped communicating with DSE completely after August 2012. Thus, Legacy's complete failure to perform under the agreement after August 2012 forecloses Legacy's argument that it chose the third option.

Regarding the second option, Legacy argues that there was no evidence to support the court's finding that it had accepted DSE's repudiation of the agreement. According to Legacy, in order to find that it accepted DSE's repudiation of the agreement, it was required to do some affirmative action manifesting such choice, for example, notifying DSE of its decision.[25] Although Legacy claims it took no affirmative actions in response to DSE's August 2012 letter and lawsuit, the evidence cited above demonstrates that this argument lacks merit.

---

[25] See, e.g., *Truman L. Flatt &c. v. Schupf*, 649 NE2d 990, 996 (Ill. Ct. App. 1995) ("[W]here the aggrieved party has not otherwise undergone a material change in position, the aggrieved party must *indicate to the other party* it is electing to treat the contract as rescinded. This can be accomplished either by bringing suit, by notifying the repudiating party, or by in some other way manifesting an election to treat the contract as rescinded.") (emphasis in original).

Moreover, the fact that Legacy gave notice on the first day of trial in the first suit that it was not going to pursue the future fees does not mean that Legacy could reverse or disregard its complete failure to perform under the agreement between August 2012 and the February 2015 trial. Having chosen the option of treating DSE's letter as a repudiation of the entire agreement and acting accordingly for two-and-one-half years, Legacy was not entitled to suddenly reverse course and elect a different option immediately prior to trial when it became apparent that it might not be able to prove its claim for the future fees at trial.[26]

---

[26] See generally *Ga. Power Co. v. Fountain*, 207 Ga. 361, 365 (61 SE2d 454) (1950) ("Estoppel by election results where a choice is exercised between inconsistent remedies. The election and prosecution of an available remedy is a bar to the pursuit later of an inconsistent one.") (citations omitted); *Peterson v. Lott*, 200 Ga. 390, 393-394 (2) (37 SE2d 358) (1946) ("Waiver by election results where a choice is exercised between inconsistent remedies; and in such a case any decisive act of affirmance or disaffirmance, done with knowledge of the facts, determines the right of the party once and for all. . . . It has been said that the so-called 'inconsistency of remedies' is in reality not an inconsistency between the remedies themselves, but must be taken to mean that a certain state of facts, relied on as the basis of a certain remedy, is inconsistent with and repugnant to another state of facts relied on as the basis of another remedy. If a party, therefore, invokes a remedy appropriate to a certain state of facts, and another remedy exists appropriate to a different state of facts, his invocation of the first remedy is an election. Two remedies are inconsistent, if the assertion of one involves the negation or repudiation of the other.") (citations omitted).

Consequently, given the undisputed evidence of Legacy's actions after receiving DSE's August 2012 letter, combined with evidence that Legacy consistently sought both past and future royalty and advertising fees in the first suit up until the first day of trial, the trial court's finding that Legacy chose the second option, i.e., electing to treat DSE's repudiation as a breach of the entire franchise agreement, is not clearly erroneous.[27] It follows that, having accepted DSE's anticipatory breach of the entire agreement, Legacy was able to immediately sue to recover damages for such breach, including the present value of the future fees.[28]

2. Legacy argues, however, that it did not explicitly seek to recover the future fees in its counterclaim to the first suit, so the trial court erred in finding that the claims in the second suit were barred by the doctrine of res judicata. We disagree.

The doctrine of res judicata is codified in OCGA § 9-12-40, which provides that "[a] judgment of a court of competent jurisdiction

_____

[27] See *Allen*, 303 Ga. App. at 845 (A trial court's findings of fact following a bench trial will be affirmed if they are supported by any evidence.).

[28] See *JLK*, 330 Ga. App. at 402 (1) (finding that Legacy was entitled to seek recovery of lost future royalties that it would have received if JLK's breach had not prompted Legacy's termination of the franchise agreement prior to the completion of the agreement's original 20-year term); see also *Textile Rubber &c. v. Thermo-Flex Tech.*, 308 Ga. App. 89, 94 (1) (a) (706 SE2d 728) (2011); *Parker v. King*, 68 Ga. App. 672, 675 (23 SE2d 575) (1942).

14

shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." Res judicata prevents plaintiffs from asserting claims arising from the same transaction piecemeal or presenting only a portion of the grounds on which relief is sought and leaving the rest for a second suit if the first fails. Three prerequisites must be satisfied before res judicata applies -- (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.[29]

Here, the parties in the first suit are obviously the same as in the second suit, and neither party disputes that the first suit was decided in a court of competent jurisdiction. Therefore, the only remaining issues are whether there is identity of the cause of action in both cases, and whether the trial court's judgment in the first suit was a final adjudication on the merits of the claims brought in that suit.

Regarding identity of the cause of action, in the second suit, Legacy sought recovery of unpaid royalty and advertising fees that had been due in January and February 2015. As the trial court found, however, Legacy's counterclaim in the first suit was based upon DSE's breach of the entire agreement, so Legacy could have

---

[29] *Atlanta J's v. Houston Foods*, 237 Ga. App. 415,416-417 (514 SE2d 216) (1999) (citations and punctuation omitted).

15

sought recovery of all the fees due under the agreement – both past and future – if it had chosen to do so.[30] It follows that, because Legacy could have obtained a judgment on these claims in the first suit,[31] there is an identity of cause of action between the two cases.[32]

As to the last issue, "[t]he adjudication on the merits must constitute a final judgment upon the matter in question for res judicata to apply. . . . A judgment is final when it disposes of the entire controversy, leaving nothing for the trial court to do in the case. The effect of a judicial act and not the trial court's characterization of it determines whether it is a final judgment."[33] However,

> an adjudication on the merits does not require that the litigation should be determined on the merits, in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the

---

[30] See OCGA § 9-12-40 (res judicata applies to a final judgment on the merits as to "all matters put in issue or which under the rules of law might have been put in issue"); see also *Mays v. City of Fairburn*, 301 Ga. App. 386, 387 (1) (687 SE2d 591) (2009); *Atlanta J's*, 237 Ga. App. at 419 (3), (4).

[31] This is particularly true since, on the first day of the trial on the first suit, February 23, 2015, those fees were already overdue under Sections 3.2 and 8.1 of the franchise agreement and, thus, were not "future" damages at all.

[32] See *Atlanta J's*, 237 Ga. App. at 419 (3), (4).

[33] Id. at 417, 418 (2) (citation and punctuation omitted).

16

parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases. Thus, it is only where the merits *were not and could not have been determined* under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.[34]

In this case, even if Legacy's breach-of-contract counterclaim in the first suit did not explicitly seek damages for the future fees, Legacy *could have sought such fees* based upon DSE's repudiation of the entire contract. Thus, when the trial court issued a final judgment in the first suit, the court disposed of the entire case presented to it (including Legacy's counterclaim), leaving nothing further for the court to decide. It follows that such judgment constituted a final adjudication on the merits of Legacy's counterclaim.[35]

---

[34] Id. at 418-419 (3) (citation and punctuation omitted; emphasis supplied).

[35] See id. at 418 (2) ("The only relief requested by plaintiff in the magistrate court was the issuance of a writ of possession, and plaintiff expressly declined to seek judgment for any amounts due under the lease. Accordingly, the issuance of the writ of possession disposed of the entire case in magistrate court, leaving nothing further for the court to do. As such, the writ constituted a final judgment in the dispossessory action.") (citations omitted); see also *Mays*, 301 Ga. App. at 387 (1) ("It is axiomatic that the same issue cannot be relitigated ad infinitum.") (punctuation and footnote omitted).

As a result, the trial court did not err in finding that Legacy's second suit was barred by the doctrine of res judicata.[36]

3. Finally, Legacy argues that it is entitled to sue for the future fees as they come due every month throughout the remaining term of the agreement, relying upon a case involving a landlord/tenant dispute over past-due rent, *Executive Fitness, LLC v. Healey Bldg., L.P.*[37] Such reliance is misplaced, however, because, unlike in the instant case, neither party in *Executive Fitness* had repudiated or terminated the lease agreement prior to the landlord's first suit against the renter for past-due rent.[38] Instead, the landlord continued to allow the renter to remain in possession of the rental property, and the landlord continued to accept rent and otherwise perform

---

[36] See *Atlanta J's*, 237 Ga. App. at 420 (5) ("By electing to divide its claims into two separate actions, and seeking separate relief in each action, plaintiff ran the risk that a judgment in one action would operate as a bar to the other action.").

[37] 290 Ga. App. 613, 614 (1) (660 SE2d 26) (2008) ("Where suit is brought on a written contract for rent payable in installments, a recovery cannot be had for installments falling due after the suit is commenced. Each installment under a contract constitutes a different cause of action on which an action can be brought, even though all are provided for in the same contract.") (footnotes omitted).

[38] Id. ("[T]he lease was still in effect at the time the first suit was commenced[.]").

under the lease.[39] Thus, when the renter again failed to timely pay rent for subsequent months, res judicata did not prevent the landlord from filing another suit for those rent payments.[40] In contrast, DSE repudiated the franchise agreement at issue in this case, and Legacy accepted the repudiation and sued for breach of the entire contract. Consequently, because the franchise agreement ceased to be in effect, the holding in *Executive Fitness* does not provide authority for Legacy to repeatedly sue DSE for fees that would have otherwise become due over the next several years.

*Judgment affirmed. Miller, P. J., and Doyle, P. J., concur.*

---

[39] Id. at 613-614.

[40] Id. at 614-615 (1).

19